## PORTIS AND WIFE V. S. A. CUMMINGS.

In the first place, there is no doubt that under the law as it existed at the date of the will of James Cummings, (1825,) the mother, Rebecca Cummings, was forced heir to her son James, for two-thirds of his estate, that his testamentary power extended to only one-third, that he could not disinherit his mother without just cause, and that the pretermission of the mother, in the will, rendered it void, at least for two-thirds, if not for the whole of the estate bequeathed.

The instrument executed by James Cummings (he died in 1825) purporting to be a will, may be and was not valid in form, but it was admitted and recognized as such, by those who claimed under its provisions, among whom was the father of the appellee. It was not disputed by the mother, who alone had the right to contest it. It was recorded in a public office, and was acted upon as a valid will. The devisees, and through them their heirs, are bound by their own acts, and cannot dispute the validity of the bequests under which they accepted and distributed the property of the estate.

It will be perceived that a distinction is made between the rights of the heirs of Thomas and Samuel Cummings to be heard before the final disposition of the share of John Cummings in the half of this land bequeathed to Sarah Cummings, and in his supposed right in the other half bequeathed to Rebecca. He never had any interest in this latter half. He was precluded from it by the acts of his mother, who virtually assented to the will of James, and he was concluded also by his own acts in claiming and taking the property bequeathed to him under the will. There is therefore no necessity for calling in persons who could not possibly have any interest, and who were disqualified aliens at the time of these transactions and the accrual of the right of the appellant, to this half.

See this case as to the residence of a minor in a foreign country, under the Mexican law.

Appeal from Brazoria.

*D. Y. Portis*, for appellants.

*J. B. & G. A. Jones*, for appellee.

HEMPHILL, CH. J. It would be most unprofitable labor to explore the immense mass of heterogeneous pleadings which encumber fifty pages or more of this record. The subject matter of controversy is a league of land originally granted to James

Cummings; and the appellee, Samuel A. Cummings, who was plaintiff in the Court below, is the nephew of this James Cummings, being the son of William Cummings, who was the brother of the said James; and Rebacca Portis, the appellant, is the sister of James, being now intermarried with the other appellant, David Y. Portis.

The suit was commenced in 1849, and was finally tried in 1854; the respective parties in the mean time, at various times and by various pleas, repeating and shifting the grounds on which they based their respective claims, and essentially modifying the averments of the facts of the family history, in particulars affecting the rights of the parties.

Instead of tracing out the labarynthine convolusions in which this controversy has become involved, and stating the law of the case as it might arise, provided the facts stated in one of the pleadings were true, and then the law, provided some other state of facts was the truth, I will proceed to state the facts established by the proof, and the law as it arises on those facts.

It appears, then, that James Cummings, the original grantee of this league of land, died some time in the year 1825, leaving alive at his death, and residing in this country, his mother, Rebecca Cummings, his two brothers, John and William Cummings, (the latter being the father of appellee,) and also two sisters, viz: Sarah and Rebecca, the latter being the appellant in this suit, and now the wife of David Y. Portis. It appears, also, that James Cummings made a will, or executed an instrument which he deemed to be a will, by which he bequeathed this land equally to his two sisters, Sarah and Rebecca, devising to his two brothers, John and William, a hacienda of five leagues of land which the testator had received by grant from the Mexican Government, dividing between his brothers and sisters the remainder of his property. This will was recorded in the office of the Empresario, and preserved among the archives, and was admitted, acknowledged, acquiesced in and acted upon by the devisees; the said John and William Cummings proceeding under the bequest in the said will, to make a

partial division of the five leagues bequeathed, and assuming ownership by virtue of said will; the devisees of this league of land, and especially the appellant, claiming under the said will, her right to such land not being denied, but impliedly and expressly admitted. The mother of James Cummings, (who was altogether pretermitted in his will,) lived six or seven years after his death, the family residing together; but there is not a particle of evidence to show that she, as forced heir of the said James, claimed any of his estate, or that she did not entirely acquiesce in the dispositions made under his will. William Cummings, the father of appellee, died in September, 1828. His son, the appellee, was then about a year old, and in the following year, viz: the Spring of 1829, he was taken by his mother to the United States of the North on a visit, as his mother alleged in a petition for the appointment of a guardian to the child during his absence. The mother subsequently married in Kentucky, and became domiciled in that State, the son remaining with her, and not returning until shortly before the commencement of this suit. He returned, however, before he arrived at the age of majority; and Pleasant D. McNeill, who had been appointed in 1829 on the petition of his mother, continued to act as the guardian of the appellee until his return to this State.

Sarah Cummings, the sister of James Cummings, the original grantee of this land, died shortly before the mother, in 1832. John Cummings, the brother, died in 1839; and as at the time of his death, aliens could claim by inheritance, it becomes ne. cessary to state that besides the appellee and appellant, the said John Cummings left at his death two brothers, Thomas and Samuel, or their children, who were entitled to a distributive share of his estate.

The appellant pleaded prescription, and proved that she had held at least since eighteen hundred and thirty-two, by adverse possession, and that John Cummings had always recognized and admitted her right to the land as valid under the will of the testator. These are believed to be all the material facts

in the cause, and all which it is necessary to recapitulate in order that the law, as applied to the case, may be fully understood.

In the first place, there is no doubt that under the law as it existed at the date of the will of James Cummings, the mother, Rebecca Cummings, was forced heir to her son James, for two-thirds of his estate, that his testamentary power extended to only one-third, that he could not disinherit his mother without just cause, and that the pretermission of the mother in the will rendered it void, at least for two-thirds, if not the whole of the estate bequeathed. (Escriche, HEREDERO FORZOSO ; Querralla de Testamento Inoficioso, Febrero Mejican, Vol. 2, p. 150 ; Partidas 6, law 4, tit. 8.)

In the second place, it appears to be equally clear, that the mother. acquiesced in her exclusion from the will and in the claims of her children to take the property under the same. They did accept, claim and hold the property as their own ; and there is not a tittle of evidence, not a shadow of a shade of a presumption, that the mother was dissatisfied with the will or any of its provisions, or that she was in any way opposed to it, or dissented from it in the most slight particular.

The existence of such will could not have been unknown to her. Her sons William and John claimed through the will the hacienda or mill tract on which she lived with the other members of the family. They divided the tract between them, and, as appears from evidence in other causes, they sold a portion of the land to others. These transactions could not have taken place in the dark. The surveys and other arrangements connected with them, and the claims of the devisees, were in fact public and well known to the vicinage, and could not have been concealed from the mother. The presumption that they were either unknown to her, or that she set up or pretended an opposing right, is too violent to be entertained. Having knowledge, then, of the will of James Cummings, and of the acts of possession, division and sale by the devisees, and having silently acquiesced, and thus virtually disclaimed all right, she

and all who claim under her are precluded from setting up her rights as against the will, and this on the general principle that a forbearance from acts of ownership and neglect to interpose when others were exercising such acts, was a virtual admission of rights in the latter which she could not afterwards gainsay. (1 Phillips, p. 355.)

Had James Cummings in his will formally attempted to disinherit his mother for causes assigned, and had she acquiesced for five years, she would have been barred of her action to set aside the will for inofficiousness. (L. 4, tit. 8, Part. 6.)

The mother, who is the forced heir in this case, having been totally pretermitted or not mentioned in the will, no action was necessary to have it set aside, as it was void *ipso jure;* but though it may be null, that appears to be no sufficient reason why its provisions may not have effect under the express or implied assent of the heir whose rights are affected, and who alone can be injured under its provisions. She was not obliged to assert the rights to which she was entitled by law. She might waive them, and by her assent in acts or words, might transfer them, or permit them to remain in another. She lived seven years after the will, and it is not pretended that she ever claimed the property or disputed the force of the will. If the testator had attempted to disinherit her formally, she would have been barred in five years, and there appears no reason why, under the circumstances of this case, she should not have been barred by the lapse of that period of time, if in fact by her acts of express or implied assent she had not bound herself before that period had expired. The mother then having precluded herself by her silence and acquiesence for the space of seven years, from setting up her rights as against the will, the appellee, through his father claiming from such mother, (that is from his grandmother,) cannot dispute the right of the appellant Rebecca to the one half of this land, this moiety having been bequeathed to her by the will.

But the appellee is further precluded from contesting the rights of the appellant Rebecca, under the will, by the acts of

his father, William Cummings, who was one of the devisees, who recognized and acted upon its provisions and received his distributive share of the property therein bequeathed. This share he never renounced. It formed a portion of his estate, and was transmitted to the appellee as his only heir, as appears from the inventory or statement of his estate furnished by his guardian, Pleasant D. McNeill.

The instrument executed by James Cummings, purporting to be a will, may be and was not valid in form, but it was admitted and recognized as such by those who claimed under its provisions, among whom was the father of appellee. It was not disputed by the mother, who alone had the right to contest it. It was recorded in a public office, and was acted upon as a valid will. The devisees, and through them their heirs, are bound by their own acts, and cannot dispute the validity of the bequests under which they accepted and distributed the property of the estate.

The will of James Cummings having been, by the acquiescence of his mother, permitted to take effect, and having been accepted by the devisees, cannot be impugned by the appellee, (who is the heir of one of these devisees,) consequently he cannot dispute the right of the appellant Rebecca to the one-half of this league, the same having vested in her by bequest under the will. Nor can her right be contested by the heirs of John and Sarah Cummings, the other devisees. John Cummings was concluded not only by his own acts in taking property under the will before the death of his mother, but he, as also the other children, were concluded by the acts and acquiesence of the mother, which were equivalent in fact to a gift by her of the property of James to the devisees, according to the wishes of the testator. The mother's right to this property had passed from her before her death; consequently none of her children, after her death, could claim any right in opposition to the disposition which had been made of it by the will, and which by her assent had become valid to the distributees for their respective shares. The appellant Rebecca's title to the one-half

of this land, under the bequest, thus became perfect, and cannot be assailed by the appellee or by any other claiming through Rebecca Cummings, the mother.

Having disposed of the one-half of this league, which we have seen was vested in the appellant Rebecca, let us enquire into the rights of the parties to the other half, which was bequeathed to Sarah Cummings, the other sister. She died shortly before her mother. Her estate therefore vested in the mother as forced heir, unless it had been previously disposed of by Sarah in her lifetime, and the mother dying shortly afterwards, the said property descended to her heirs who were not aliens and capable of taking by inheritance, viz: to John Cummings and the appellant Rebecca and the appellee. Of this half, then, the appellant Rebecca is entitled to one-third in her own right, the appellee to one-third, and the estate of John Cummings to the one-third, provided the share of the said John is not barred by prescription in favor of Rebecca the appellant.

The only matter, then, about which there can be further controversy, is the share of John Cummings to the one-half of this land which was bequeathed to Sarah. If this has vested in the appellant by prescription, she is then entitled to the two-thirds of this half and the appellee to the other third; if not, it must be distributed between the appellant and appellee and the children of Thomas and Samuel Cummings.

From the evidence in this cause, the presumption is strong that prescription, as against the said John's interest in this half, has operated in favor of the appellant. The land was long occupied by her tenants under a claim of exclusive right, and which was admitted by John Cummings himself. Whether his admission was intended to apply to only the one-half originally bequeathed to Rebecca, or the whole league, is the only point about which there can be any difficulty. He may have intended to distinguish between the share originally bequeathed to Rebecca, and that to her sister, and to have admitted Rebecca's right to the former only. So far as the evidence goes in this cause, he made no such distinction; but it might be

proven otherwise, and all of the heirs should have an opportunity of being heard, that their claims to this share of John's estate may be finally adjudicated.

It will be perceived that a distinction is made between the rights of the heirs of Thomas and Samuel Cummings to be heard before the final disposition of the share of John Cummings in the half of this land bequeathed to Sarah Cummings, and in his supposed right in the other half bequeathed to Rebecca. He never had any interest in this latter half. He was precluded from it by the acts of his mother, who virtually assented to the will of James, and he was concluded also by his own acts in claiming and taking the property bequeathed to him under the will. There is therefore no necessity for calling in persons who could not possibly have any interest, and who were disqualified aliens at the time of these transactions and the accrual of the right of the appellant Rebecca to this half. But as to the other half which passed by Sarah's death to her mother, and a portion of which on the mother's death vested in John, and which the appellant now claims by prescription, all the heirs of John are entitled to be heard, and they are required to be brought in and made parties to this suit.

It will not be necessary in their case, to discuss the right of the appellee to claim lands in this State as the heir of his father. This has been settled in another cause between these parties, and it has been determined that his residence during his minority in a foreign country, did not, under the circumstances, forfeit his right of citizenship, or his right to take and hold lands by descent. His minority will protect him from any prescription, except such as shall have commenced in the life time of some one from whom he may claim.

To recapitulate in order that the parties may understand the points of this controversy which remain open, it is clear that the appellant Rebecca is entitled to the one-half which was bequeathed to her under the will ; that she is also entitled to the one-third of the half bequeathed to Sarah, and that the appellee is entitled also to the one-third of this half, and that unless

the appellant can sustain her claim by prescription to the interest of John Cummings in this half bequeathed to Sarah, then the same must be distributed between all the heirs of John Cummings; and it is therefore ordered, adjudged and decreed, that the judgment be reversed, and that the cause be remanded for further proceedings, according to the rules and principles set forth in the foregoing Opinion.

Reversed and remanded.