## JAMES D. GIDDINGS v. MOSES E. STEELE.

It is a general rule that heirs cannot sue in their own right as heirs for property of their ancestor's estate; but there are exceptions to this rule, as when there is no administrator or executor, or when the administration has been closed.

It would seem to be a safe rule not to permit heirs to recover property of the estate in their own name, unless they make it appear that the administration has been closed, or that there is no administrator appointed or acting, and no debts against the estate.

If an administrator's sale of property be canceled on account of fraud, the property thereby becomes unadministered assets of the estate, and falls back into the hands of the administrator for disposition in due course of the administration. If necessary for the protection of parties concerned, the administrator who made the fraudulent sale can be removed and an administrator, *de bonis non*, be appointed; or a receiver might, perhaps, be appointed at the instance of the heirs, for the protection of the property of the estate until the appointment of a more faithful administrator.

If the heir in his own name institute suit in the district court to recover property fraudulently sold by the administrator of the estate, and in such suit allege and show that there were no debts against the estate, and that the administration upon it was fraudulently procured, the suit, perhaps, may be maintained, but it is upon the ground that there are no debts against the estate and no administrator. But it would seem that if the administration were legal and valid, and were still open, the suit would not be maintainable, even if the sale by the administrator was fraudulent; for in that state of the case the property, on a cancellation of the fraudulent sale, would not accrue to the heir, but would fall back into the estate for administration.

By the 36th section of the act of the 5th February, 1840, which was in force in 1846, (Hart. Dig., Art. 1030,) a rule was prescribed by which a probate judge, on every application for letters of administration, should determine, by proof, whether his county were the proper one wherein the administration should be granted; and his decision upon that question was conclusive until reversed on appeal or other proceeding taken for its revision, and it cannot be attacked in a collateral action. (Paschal's Dig., Art. 1260, Note 462, p. 301.)

When a probate court has jurisdiction of an estate, mere irregularities or unsupplied omissions in its proceedings, had in granting letters of administration or orders of sale, do not invalidate the letters or orders. (Paschal's Dig., Arts. 1260, 1314, Notes 462, 488.)

An administrator re-established by suit a land certificate which had been rejected by the traveling board of land commissioners, and which, but for his action, must have been lost to the estate, and afterwards he sold the certificate under order of the probate court for the payment of claims against the estate. The heir of the intestate instituted this suit to recover from the purchaser the land acquired by him under the certificate, alleging that the probate court, by which the administrator was appointed, had not jurisdiction to grant administration on the estate; that the letters of administration were procured by a fraudulent combination between the administrator and the purchaser of the certificate; that there was fraud in the sale of the certificate, or in the procurement of the order of sale therefor; and, in consequence, that the sale of the certificate was void: *Held*, that the heir is estopped from denying the capacity of the administrator by whom the certificate had been acquired for the estate, but is not estopped from

averring and proving that there was fraud in the sale or in the procurement of the order therefor.

An administrator becomes himself liable for the proceeds of property of the estate sold by him on a credit, if he make a conveyance of the property without taking note and security as required by law, and when a conveyance of property so sold has been made by an administrator, it is to be presumed, in the absence of proof, that the terms of the sale were complied with. (Paschal's Dig., Arts. 1327, 1328, 1333, Notes 498, 499.)

But, even if it be proved that the purchase-money of an unlocated land certificate had not been paid by the purchaser to whom it was conveyed by the administrator, it does not follow that the heir would be entitled to the land acquired by the purchaser under the certificate. The recovery of the purchase-money from the purchaser or the administrator would seem to be the extent of the relief to which the estate or heir would be entitled in such case.

It is the duty of the courts to transfer administrations to new counties, under the statute, and it is no evidence of fraud to make the transfer. (Paschal's Dig., Arts. 1257 to 1259, Note 461.)

Where suits on notes were instituted against a party who died after being served with process, and his death was suggested to the court, but his legal representative was not made a party in his stead, (Paschal's Dig., Art. 7, Note 225,) and judgments on the notes were rendered against the deceased defendant, the judgments so rendered were not absolutely void, but only voidable, and on writs of error, *coram nobis* in the court where rendered, they might have been set aside and correctly rendered against the representative of the deceased defendant. It was error, therefore, to instruct the jury that such judgments were void, and could not constitute valid demands against the estate of the deceased defendant, but that the original notes on which the judgments were rendered were the evidences of indebtedness instead of the judgments themselves, and that, if such notes were barred by limitation at the date of the appointment of the administrator, they could not be made, even by allowance and approval, valid claims against the decedent's estate, so as to authorize the grant of an order of sale of property to provide for their payment.

An approval by the probate judge of a claim allowed by an administrator against the estate he represents is a *quasi* judgment against the estate, and cannot be annulled in the county court, but only in the district court, on a direct proceeding to set aside the approval on the ground of fraud or mistake, which proceeding must be instituted within a reasonable time after the rendition of the judgment of approval. (Paschal's Dig., Arts. 480, 1312, Notes 334, 335, 485.)

It is competent for the heir of an estate to institute in the district court a proceeding to annul the approval by the probate judge of a claim against the estate, on the ground that the allowance of the claim by the administrator was fraudulent.

The rule is believed to be almost universal, that contracts are presumed to be fair and not unlawful or fraudulent; and the party who attacks them as fraudulent has the burden upon him of proving the fraud by positive or circumstantial evidence.

Fraud will vitiate judgments of courts and transactions or proceedings based upon them, however authentic they may appear to be; but judgments will not be set aside on mere surmise or suspicion of fraud, nor merely technical fraud, but only on account of actual and positive fraud in fact, established by evidence which naturally and reasonably tends to that conclusion. (Paschal's Dig., Art. 3876, Notes 906, 907.)

That an attorney at law held claims against an estate for collection, and used all legal efforts to obtain an order of sale of property of the estate to provide for their payment, and at the sale became himself the purchaser of the property sold, are not facts which tend to prove fraud in the sale or in the order therefor. It was his duty as an attorney to obtain payment of the claims in that or any other lawful manner, and he had as much right as other persons to bid for the property at the sale.

See the opinion of the court *in extenso* for an elaboration of the foregoing rulings, and for the application of them to the facts of this case.

APPEAL from Williamson. This case was tried before Hon. EDWARD H. VONTRESS, one of the district judges.

The appellee, Steele, brought this suit on the 21st of August, 1857, to recover from Giddings, the appellant, and one Chadwick, a league and labor of land in Williamson county. In his original petition, the plaintiff alleged that he was the sole heir of William H. Steele, deceased, and as such was the legal and equitable owner of the land sued for, but had been ousted of possession by the defendants; that the defendant, Giddings, had confederated with one R. H. Flannikin to cheat and defraud plaintiff out of the land and the certificate located on it; that Flannikin had, without any authority of law, assumed to act as administrator of said William H. Steele, deceased, and had in that capacity executed to Giddings a deed for the certificate under which the land sued for was located, and that Giddings had subsequently conveyed by deed to the defendant, Chadwick, two hundred acres of the same land. Prayer for judgment canceling said deeds, and for the lands sued for and damages.

The defendants. excepted generally, and plead not guilty and the general denial. Subsequently, on the 14th of March, 1860, they amended their answer, and denied any fraud or collusion between Giddings and Flannikin to defraud the plaintiff; admitted that Flannikin had, on the 2d of February, 1853, as administrator of W. H. Steele, deceased, executed to Giddings, for a full and valuable consideration, a deed for the certificate under which the land in controversy was located, alleged that the deed was in all respects valid and binding, having been executed to Giddings as a purchaser in good faith, under an order and decree of the county court of Burleson county, where the estate of said W. H. Steele was administered, and that Giddings' title to the certificate was confirmed by order and decree of said court, on the 1st of February, 1853, which decree is conclusive and cannot be impeached; that the certificate was issued to W. H. Steele, as the assignee of Maria Jesusa Garcia, but was rejected by the traveling board of land commissioners; that after Flannikin administered on W. H. Steele's estate he employed Giddings to have the certificate re-established under the act of 1841; that the witnesses to re-establish the certificate resided in the county of Bexar, and defendant, Giddings, accordingly went to San Antonio, and employed I. A. & G. W. Paschal to bring the necessary suit against the State to re-establish the certificate, and paid them $250 for their services in such suit; that the suit was brought in the name of Flannikin, as administrator, and recovery therein was had in his name, and that the certificate, as established, was issued to Flannikin as administrator; and that defendant, Giddings, had expended the further sum of $200 in necessary outlays in the said suit; that the certificate was duly inventoried as the property of said estate, and on the petition of the administrator was, by order of the said county court, of date December 22, 1852, directed to be sold, and, after due advertisement, was sold accord-

ingly, when defendant, Giddings, purchased the same in good faith for the sum of $805, and located the same at his own trouble and expense on the land in controversy, and procured a patent to issue thereon; that suit to establish the certificate had to be commenced by the 1st day of July, 1847, or would have been forever barred; that when the suit was instituted, and for many years thereafter, the plaintiff was a non-resident of this State, and that but for the administration of Flannikin, and the action of defendant, Giddings, the right to re-establish the certificate would have been forever barred; and therefore that, if the plaintiff claims the benefits of the acts of the said Flannikin and Giddings, he is estopped from denying the rights of Giddings under his deed from Flannikin as administrator. But that, if it should be determined that defendant, Giddings, did not acquire title to the certificate by his purchase, he is at most only liable to pay its value, or he is entitled to one-half of the land by reason of his location thereof, together with remuneration for his outlays and services, which he alleges to amount to about $1,000.

Giddings plead limitation of two and four years, and Chadwick also plead the limitation of three years under the title or color of title constituted by Giddings' deed to him.

The plaintiff on the same day excepted to the amended answer, and amended his petition, denying generally all the allegations of the defendants, and specially denying the validity of Flannikin's deed to Giddings, and that it was made in good faith or for any consideration; denying also that any order or sale or confirmation was ever made by any court having jurisdiction over the estate of W. H. Steele, deceased; denying all the allegations relative to the suit by Flannikin and Giddings for the establishment of the certificate; denying that at the time of the sale there were any debts against W. H. Steele's estate; denying the location of the certificate by Giddings, or the procurement of the

47—XXVIII

patent by him, and all outlays claimed by him. Proceeding with this amended petition, the plaintiff alleges that Flannikin was the heir at law of Joseph L. Hood, deceased, and that at the date of the letters of administration on Steele's estate, granted by the county court of Milam county to Flannikin, and at the date of the removal of the administration to Burleson county, and at the time of the sale of the certificate, Giddings was the attorney of Flannikin and the other heirs of Hood, and was, together with another attorney, to have one-third of so much as they could secure out of Hood's estate to the heirs; that at the periods mentioned Flannikin and Giddings well knew that the probate courts of Milam and Burleson counties had no jurisdiction over W. H. Steele's estate; that they well knew that there was no necessity for the sale of the said land certificate, and that there were no valid or subsisting claims against W. H. Steele's estate; that Giddings, as an attorney at law, had the control of five or six large judgments against the said decedents, Hood and Steele; that the records of the District Court of Washington county, where these judgments were rendered, showed that said Steele was dead at the time such judgments were rendered against him and Hood; that each of these causes had been continued on the docket of the court for the purpose of making Steele's representative a party defendant, but that such representative was never made a party, and the judgments were fraudulently and unlawfully entered up against Steele, and were therefore void, so far as he or his estate or heir is concerned, but were valid and subsisting claims against the estate of the said Hood, all of which facts were well known to said Flannikin and Giddings during the whole term of the administration on said Steele's estate; that Flannikin and Giddings, being interested as aforesaid in Hood's estate, confederated together and obtained the letters of administration for Flannikin on said Steele's estate, for the purpose of obtaining the sale of Steele's estate to

pay the said judgments; that at the time of the death of said Steele he had a fixed home and domicil in Washington county, which was the only county in which letters of administration could properly issue; that he owned no property, either real or personal, or, if any, a very inconsiderable amount, in either Milam or Burleson counties, and that neither of these counties had jurisdiction over his estate; all of which facts were known to Flannikin and Giddings when the county courts of Milam and Burleson counties assumed and exercised jurisdiction over said estate.

On the next day, being the 15th of March, 1860, the plaintiff again amended his petition, alleging, in reply to defendant's pleas of limitation, that he had not arrived at the age of manhood at any time within five years before the institution of this suit; that he was absent from this State from the year 1846 until just previous to the commencement of this suit; and that the defendant, Giddings, never held the certificate adversely to the estate, but in trust only, having never paid the purchase-money for the same.

There were several exceptions to the pleadings on both sides; but, in view of the opinion, it is not necessary to notice them or the rulings upon them.

Pending the suit, the plaintiff released the defendant, Chadwick, as to the two hundred acres claimed by him.

The case came to trial at the spring term, 1860. It appeared in evidence that, at the February term, 1846, of the probate court of Milam county, an order was entered appointing R. H. Flannikin to be administrator of the estate of W. H. Steele, deceased, and at the ensuing May term an order appointing appraisers upon the estate. No further proceedings were had in Milam county; but at the March term, 1847, of the probate court of Burleson county, an order was entered admitting to record a transcript of the proceedings in the probate court of Milam

county, and directing that letters of administration issue to Flannikin, on his giving bond and security as required by law. The bond was given and letters issued on the 1st of April, 1847. After several intervening orders, Flannikin, as administrator, by Giddings, as his attorney, filed his petition on the 9th of March, 1850, praying an order for the sale of two designated tracts of land belonging to the estate, for the payment of debts and the expenses of administration. This is the first occasion, so far as the record shows, which brought Giddings in connection with the administration. The order was made, but was subsequently set aside. In September, 1852, Giddings, as attorney for Flannikin, filed a petition, asking further time to settle the estate, on which an extension of one year was granted. At the November term, 1852, on the petition of Giddings, as attorney, commissioners were appointed for the purpose of appraising the land certificate involved in this suit and two other certificates, of which an inventory was then filed. The certificate in question was appraised at $460 50.

At the December term, 1852, an exhibit was filed of the claims against the estate, allowed by Flannikin, as administrator, which consisted of six judgments rendered by the District Court of Washington county, at its spring term, 1840, against J. L. Hood and W. H. Steele, and amounting in the aggregate, without interest, to some $1,200. At the same time a petition was filed by Giddings, as attorney for Flannikin, praying for an order to sell the three land certificates last mentioned, of which the certificate in question was one. This petition referred to the exhibit of claims filed with it, and for the payment of which and the expenses of administration the order of sale was asked. The order was granted at the same term, and directed the sale to be made on the first Tuesday in February, 1853, on a credit of twelve months. At the February term, 1853, Flannikin made his return of sales, alleging that he had

made due advertisement, that Giddings was the purchaser of the certificate in question at the sum of $805, and representing that each of the purchasers had complied with the terms of sale. At the same term orders were made confirming the sales, and directing Flannikin to make titles to the purchasers on their complying with the terms of sale. On the 2d of February, 1853, Flannikin conveyed the certificate to Giddings, reciting therein that the latter had complied with the terms of sale.

At the October term, 1853, of the probate court, a further extension of one year was granted to Flannikin to enable him to settle the estate; and this is the last step in the administration, so far as the record shows.

It appeared in evidence that W. H. Steele died in the spring of 1839, in Washington county, Texas.

The other facts of importance and the charges given to the jury, so far as they are essential, are substantially stated or indicated in the opinion of the court.

There was verdict for the plaintiff and judgment accordingly. The defendant, Giddings, moved for a new trial, but his motion was overruled, and he appealed. The opinion sufficiently suggests the errors assigned.

*John A. Green*, for appellant.—The court charged, in effect, that the sale could be attacked in a collateral proceeding by the heir, either for fraud in the procurement of the administration, the order of sale, or in the recognition or acknowledgment of debt, and that it could also be attacked for want of jurisdiction, and, in the first charge asked by the plaintiff, said to the jury, without qualification, that, if Steele had a fixed place of residence in Washington county and died there, the probate court of Burleson county had no jurisdiction to grant the letters of administration.

It is submitted, that the refusal to give the charges asked by the defendant, as well as the giving of those on its own

motion, and at the instance of the plaintiff on this subject, were erroneous.

This court, in Soye v. McCallister, 18 Tex., 97, and Alexander v. Maverick, Id., 179, held that the death of the party gave the court jurisdiction over the estate, and that every presumption was to be made in favor of the proceedings of the county courts, as that of courts of general jurisdiction.

That the absence of such proceedings in the record as would be necessary to validate its judgments would not vitiate a sale, but that these would be presumed to have existed. (Dancy v. Stricklinge, 15 Tex., 557; Baker v. Coe, 20 Id., 429; Poor v. Boyce, 12 Id., 440; Alexander v. Maverick, 18 Tex., 179;) [Paschal's Dig., Art. 1313, Note 487.]

The views expressed in these cases will dispose of the objections of the appellee to the regularity of the application for administration to the county court of Milam county and transfer to Burleson.

In the case of Burdett v. Silsbee, 15 Tex., 604, it was held that the county courts were judges of their own jurisdiction, and their judgments in reference thereto are conclusive. This is the principle running through all the cases above cited, as well as other cases decided by this court. It is held that whatever was necessary to be determined by the court, before it could act, will be considered as having been determined.

How is it in reference to this case? The question of jurisdiction has been acted on by the court, because it was a necessary precedent fact to be determined before the jurisdiction could be assumed, and the court will presume the facts existed or were shown at the time that authorized its action, and that it acted correctly cannot now be questioned.

After this great lapse of time, (fourteen years,) all the facts could not be shown which might have been in exist-

ence, or even in proof, before the county courts of Milam and Burleson counties, that would have authorized their action. The facts which gave the probate court jurisdiction were proper subjects of inquiry; and if it appeared from the testimony before it that the necessary facts existed, the judge had the power to grant letters of administration. The fact that the court may have been mistaken will make no difference. Steele may, in fact, never have resided in the counties of Milam and Burleson. He may have had a fixed place of residence in Washington, and have died there, and yet there may have been evidence, or a conflict in the evidence, before the court, at the time of the grant, showing the contrary; and it is likely that such was the case, as, even at this late day, a respectable witness, who knew Steele well, is of the belief that he had no fixed place of residence. The court may have erred in its judgment in respect to these facts, but, nevertheless, this judgment could not be impeached in a collateral proceeding.

The only mode of taking advantage of it was by a direct proceeding under the statute; and this the heir had power to do after he arrived at age, and even at the time of bringing his suit, and at the time of trial, as it was shown that even then the administration had not been closed.

The reason of this is, that the law has provided for heirs and others who are parties or privies to an administration specific remedies, by appeal and otherwise, by means of which they can attack the proceedings of an administrator directly.

Public policy requires that they shall be precluded from setting up title to a thing sold under a judicial proceeding as the property of the ancestor, unless they attack the proceeding in the direct manner pointed out by law.

And in this they are in a different position from strangers to the proceedings, who have had no day in court, and no opportunity to attack the proceeding com-

plained of directly. Hence they are permitted to attack the same collaterally.

It is submitted whether the claims were not good against Steele's heirs. The proof seems to be that Steele was dead at the time of the rendition of the judgment, and it is sought to hold them utterly void for this reason.

It may be well doubted whether this could be shown to avoid judgment of a court of general jurisdiction after so great a lapse of time, when the proceedings on their face show that the court had jurisdiction of the subject-matter. However that may be, it is not for that reason necessarily void. The court had undoubted jurisdiction over the subject-matter, and had once jurisdiction over the person of Steele. When he died, jurisdiction over the person may have ceased, but remained over the subject-matter.

If the court, therefore, rendered judgment after the death of Steele, it was error, of which the administrator, or the heir, after arriving at full age, could take advantage and have revised. The judgment was not void, but only erroneous, or voidable. That the debts are such as Steele owned in his lifetime is not disputed.

The administrator was not bound to know that the judgments were rendered after Steele's death, neither was Giddings, who only represented (for collection at most) the creditors who claimed the judgments. That either the administrator or Giddings knew of the defect there is no evidence. The judgments were the record of a court of general jurisdiction, and on their face imported verity. There is an entire absence of proof to convict the administrator, the court, or the purchaser, that they knew of any defect in the judgment.

What, then, is the condition of the case before the court? It appears that the administration was procured not only without the assistance or concurrence of Giddings, but it was done without his knowledge.

It is submitted, that the certificate, by virtue of which

the land in this case was located, having been obtained by Flannikin as administrator, and having issued to him as such, the patent having issued thereon—that, inasmuch as the estate of Steele acquired its right by such action, the plaintiff, as the heir claiming under his act, could not dispute the representative capacity in which he acted. (See Porter v. Cummings, 14 Tex., 175, 176.)

It is said in 2 Smith's Leading Cases, ed. 1855, p. 681, 686, that where there has been a previous judicial proceeding, a party claiming under it is estopped in equity from denying the same.

And again, in the same authority, it is said, that a party claiming under the act of an agent is estopped from denying the agency.

The rule to be deduced from these cases, as applicable to this, is, that Flannikin, having acted and procured in his name an important right for the estate, as administrator, which would otherwise have been lost, and the plaintiff, as heir, now claiming the benefits of such acts, is estopped from denying the capacity in which he acted, and must take the recovery of the right subject to the disposition of the property in the same capacity.

Charges embracing this rule were asked by the defendant, and refused.

(See the whole doctrine of estoppel discussed in the Duchess of Kingston's Case, reported in Smith's Leading Cases; also notes of other decisions in England and America referred to and discussed there; also 2 Amer. Lead. Cas. in Eq., 755, *et seq.* and 761, *et seq.*)

*F. W. Chandler*, for appellee.—That the irregular, zig-zag, and fraud-savoring proceedings had in the probate courts of Milam and Burleson counties, in derogation of the rights of the heir, vested no title in Giddings to the league certificate in controversy, is so accordant with common sense and primary maxims of right, that we might

safely refrain from citing authorities in support of the proposition; but we refer to the following *dicta* as the settling this question. (2 Story Eq. Jur., § 696; Crayton v. Munger's Administrators, 9 Tex., 292; 10 Id., 34.)

If we are wrong in the position assumed on the preceding point, then we insist that we cannot be in error upon the second point raised, which is, that the whole transaction in the probate court, in so far as it affects the rights of plaintiff and defendant in this suit, is voidable, if the facts alleged in the petition are supported by the testimony adduced.

This court held, in the case of Dobbins, Administrator v. Bryan, 5 Tex., 276, that "the district courts have jurisdiction to investigate and arrest a fraudulent combination between an administrator and others confederating to injure those interested in the faithful administration of the estate." (See also DeWitt v. Miller, 9 Tex., 239.)

And there can be no material difference between the rights of a creditor and those of an heir, and this court will sustain the rights of the one, as well as the other, against "a fraudulent combination," &c.

In the case of Crayton v. Munger, Administrator, 9 Tex., 292, this court said, "There is no principle which can sanction and give legal effect to a fraud, by which an innocent person has been deceived to his prejudice, by whomsoever and in whatever capacity committed."

"There is no person, nor class of persons, capable of contracting at all, who are at liberty to perpetrate frauds upon others, to their injury, with impunity."

"An administrator, it is true, cannot create a charge upon the estate he represents by his illegal or fraudulent acts."

"The estate can neither be charged, nor can it charge others, by means of the illegal or fraudulent acts of its legal representative."

It is manifestly a result of natural justice, that a party

ought not to be permitted to avail himself of any agreement, deed, or other instrument, procured by his own fraud, or by his own violation of legal " duty or public policy, to the prejudice of an injured party."

And this decision is in harmony with the uniform tenor of the English and American authorities.

And again, in the case of Finche's Heirs v. Edmonson *et al.*, 9 Tex., 504, the same doctrine is broadly enunciated.

And this court held, in the case of McMahon v. Rice, 16 Tex., 335, that " it is clear, beyond doubt, that a sale under a grant of administration, obtained fraudulently and contrary to law, can confer no rights upon the purchaser, with notice of the fraud, as against the heirs or others interested in the estate, who are thereby defrauded."

The testimony in this case establishes the facts that Steele died in Washington county; that the defendant, Giddings, was clerk of the court at Washington when the void judgments were rendered against Steele after his death; that these judgments were sworn to before Giddings by Flannikin; and that, as soon as it was necessary for Flannikin to file any papers in the progress of his maladministration of the estate of Steele, Giddings is the attorney to prepare and file the same, along with the budget of pretended debts against the estate.

All of these pretended debts bear the evidences on their face, corroborated by the proofs in the record, that they were barred by the statute of limitation.

SMITH, J.—There were many exceptions taken by both parties to each other's pleadings that we will not undertake to discuss or decide, but will proceed to the consideration of those questions upon which we deem the rights of the respective parties materially depend.

There is a question with us, which has not been discussed sufficiently perhaps, whether the plaintiff, as the heir of the intestate, can sue for this land before it is made to appear

that the administration has been closed up; if valid, it is a general rule that the heirs cannot sue in their own right as heirs, for property of the estate; the administrator or executor must sue, else there might be two suits at the same time, one by the heir, and the other by the administrator or executor. (2 Tex., 400; Id., 182.) There are exceptions to this rule, as when the administration has been closed, or when there are no debts against the estate and no administrator; in these cases, the reason of the rule not applying, the heirs may sue. (8 Tex., 182.) When there are creditors or an administrator of the estate, the heirs should not be permitted to sue for and recover property of the estate in their own right, and hold it against the administrator and the creditors, and thus effect a partition of the estate in whole or part, without satisfying the debts against the estate. It would seem to be a safe rule not to permit the heirs to recover property by suit in their own right, unless they make it appear that the administration has been closed, or that the condition of the estate is equivalent to that, by showing there is no administrator appointed or acting, and that there are no debts against the estate. (9 Tex., 504; 9 Id., 15; 12 Id., 285; 16 Id., 335.)

If the sale of the certificate were fraudulently made, and for that the sale would be canceled, the law regards it as unadministered assets of the estate, and it would properly pass back into the hands of the administrator of the estate, to be disposed of in due course of administration. (2 Tex., 182; 15 Id., 604.) If necessary, the administrator who makes the fraudulent sale can be removed for that cause, and an administrator, *de bonis non,* appointed in his stead, (O. & W. Dig., Art. 723;) or, at the instance of the heir, a receiver might be appointed perhaps, and the property protected until a more faithful administrator can be appointed. (4 Tex., 382.)

In this case, the plaintiff contends that there are no valid

claims against the estate, and that the administration was fraudulently procured by Flannikin and Giddings, and is void. If that be the true state of the case, the suit perhaps might be maintained, but it is upon the ground that there are no debts against the estate and no administrator. But it would seem that this rule would not obtain, if the administration of Flannikin be legal and valid and still open, nor do we think it makes any difference in this respect if the sale to Giddings be fraudulent; for, in that state of the case, the sale would be canceled on account of the fraud, and the land would fall back into the estate for administration, and the administrator, *de bonis non*, could recover it on that ground from Giddings if there were fraud in the sale, and the land would again be sold to pay the debts against the estate. (Burdett v. Silsbee, 15 Tex., 604; 2 Id., 182, cited above; 9 Id., 247; 1 Will. on Ex., 785; 4 Id., 276.)

Waiving this point for the present, we will proceed to the consideration of the ground taken by the plaintiff, that the administration granted in Milam county and removed to Burleson is void, on the ground that W. H. Steele was a resident citizen of Washington county at his death. Article 1087, Hartley's Digest, in force at the date of the grant of letters in Milam county, in February, 1846, reads as follows: "That the proper county for opening successions shall be determined by proof, giving preference in the following order: first, in the county where the deceased had a fixed domicil or fixed residence; second, in the county where the deceased owned real estate; third, where the deceased had his principal effects; fourth, where the deceased died."

The probate court had a general jurisdiction over the estates of deceased persons, and the law gave the rule above by which the probate judge should determine by proof whether his were the proper county in which letters should be granted in every application to him for that pur-

pose; and it may be well contended that his decision upon the application is final and conclusive, until revoked by appeal or other direct proceeding for that purpose, and, like the judgments of other courts, cannot be attacked collaterally in respect to matters falling within its jurisdiction. (15 Tex., 616; 23 Id., 494.)

When letters of administration have been granted in one county the jurisdiction of that court attaches, and it has been held, that no other county court can take jurisdiction over the estate by granting letters, (7 Tex., 523; 15 Id., 535, 551, 616;) and the same rule obtains when the administration has been closed up. (9 Tex., 18; 12 Id., 285; 13 Id., 192; 18 Id., 97, 100.)

Mere irregularities in the proceeding had in granting letters or orders of sale, or omissions that do not appear to be supplied, will not vitiate the grant of letters or order of sale, if the court had jurisdiction over the subject-matter. (18 Tex., 98, 100; 20 Id., 430; 4 Id., 431; 12 Id., 440; 15 Id., 557.)

Letters of administration having been granted by the probate judge of Milam county, and no other probate court having assumed to grant them, it seems but a natural presumption to hold, at this late day and in a collateral proceeding, that it was in proof before the probate judge of Milam county that W. H. Steele had his fixed domicil in Milam county, and that his residence in Washington was temporary and not fixed; and upon such evidence he determined the preference in favor of Milam county; and if the evidence was not entirely satisfactory, those interested in the estate should have appealed, and had the order set aside, before the rights and interests of others become intermingled with and resting upon the legality and correctness of that decision.

The evidence in this cause does not show conclusively that W. H. Steele had his fixed domicil or fixed residence in Washington county at his death. The evidence appears

to be, that he had been the commissioner of Robertson's colony, extending grants to the colonists before the closing of the land office in 1835, and had a fixed domicil at Viesca, in Milam county, until 1837 or 1838, when he went to the town of Washington, and there engaged for a short time in merchandising; went to Kentucky, and was absent for some time, and had returned but a few weeks or months before his death, at which time he had determined to leave Washington county; that the most of his land business was in Milam and Bexar counties. This statement of the facts does not necessarily show a change of his fixed domicil from Milam county at his death, it being well settled that the domicil remains unaffected by any temporary residence abroad, and is not changed until a new one is formed by settlement in the new one, with intention of there remaining at it as his home. *Animo manendi.* (5 Tex., 469; 1 Id., 84; 11 Id., 465; 18 Id., 433; *Ex parte* Blumer, Galveston-Austin term, 1865,) [27 Tex., 734; Paschal's Dig., Note 240, p. 106.]

The certificate in virtue of which this land was patented was rejected by the traveling board of land commissioners, and in all probability the claim would have been lost to the estate entirely if Flannikin had not been appointed administrator of the estate, and instituted suit before 1st July, 1847, to re-establish it, which he did; and, as the administrator of the estate, recovered and re-established it. Now the plaintiff comes and sues for the land thus sued for and saved by the administrator, and attempts to reap the fruits of his acts as administrator of his father's estate, and at the same time denies that he was administrator of the estate authorized to recover the certificate. We are of opinion that, as he attempts to avail himself of the products or results of the acts of Flannikin, done as administrator, he will not be heard at the same time and in the same breath, as it were, to deny the existence of the capacity of the administrator, through and by reason of

which the land was acquired for the estate. He will be estopped from making such a denial. (Porter v. Cummins, 14 Tex., 175; 12 Id., 440; 11 Serg. & Rawle, 429; 2 Pet., 157; 2 How., 319; 10 Pet., 449; 8 Wend., 18; 9 Id., 107; 19 Ala., 430; 7 Cush., 350; 12 Page, 289; 1 Jones, 220.)

We are of opinion, however, that this estoppel will extend no further, and that the plaintiff will be heard to aver and prove fraud in the sale of the certificate, or in obtaining the order under which it was made. This ground the plaintiff appears to have taken, and upon it the jury appear to have based their verdict mainly. But, before considering further the question of fraud, we will consider the following instruction given by the court to the jury: That, if Giddings had not plead anything for the certificate located on the land, the title between him and the plaintiff is void for want of consideration, and the plaintiff should recover.

The sale was made on twelve-months' credit, and it was the duty of the administrator to make a conveyance to him when he complied with the terms of sale. (O. & W. Dig., Art. 780.) And if the administrator made the conveyance, or neglected to take note and security as required by law, he becomes liable for the amount of the sale. (O. & W. Dig., Art. 782.) The deed being made, and no re-sale, as the administrator had a right to make upon Giddings' failure to comply with the terms of sale, (O. & W. Dig., Art. 779,) it must be inferred that the terms of sale were complied with sufficiently to secure the amount of the sale from him or the administrator to the estate. We are of opinion that his failure to pay, if proved, was not sufficient to enable the plaintiff to recover as upon a failure of consideration. If he has not yet paid the purchase-money, it may still be collected of him or the administrator, either of which would answer the purposes of the estate, and meet its just demand upon him.

At the request of the plaintiff, the court instructed the jury that, if W. H. Steele was a resident citizen of Wash-

ington county at his death, that was the proper county in which administration should have been granted. This charge, as an abstract proposition of law, may not be objectionable, if "resident citizen" be the same as one having a "fixed domicil" or "fixed residence" in that county. But in this case we believe it was inapplicable, and was calculated to mislead the jury; for if the probate court of the county of Milam had not authority under the law to adjudicate and determine that point, and place it beyond collateral controversy, the plaintiff, in his claim of the land as heir of W. H. Steele, recovered and secured by Flannikin in his capacity and office of administrator of said Steele's estate, will not be heard to contest or deny the legality of the appointment and character of said administrator, as has been shown in this opinion.

And the charge to the jury based upon the hypothesis that he and Giddings confederated together, in obtaining letters of administration in Milam county and the removal of it to Burleson, was calculated to mislead the jury for the reasons given above, and also because there was no evidence in the cause that Giddings had any connection whatever with either the grant of letters or the removal of the administration to Burleson county, it being a new county, formed in part of Milam. (O. & W. Dig., Arts. 817, 818, 819;) [Paschal's Dig., Arts. 1257, 1258, 1259, Note 461.]

The court instructed the jury that, if Flannikin, the administrator, and Giddings confederated together in order to cheat the estate, and procured an order of sale of the certificate by a false representation to the chief justice that there were valid claims against the estate, allowed and approved, when they knew there were no such claims, and thus fraudulently procured an order of sale that Giddings might purchase the certificate, this would be fraudulent, would render the sale void, and the jury must find a verdict for the plaintiff.

48—XXVIII.

The court further instructed the jury that, if W. H. Steele were in fact dead at the date of the rendition of the judgments against him and Hood in the District Court of Washington county, and there was no legal representative made party defendant, then all said judgments were null and void as against the estate of Steele, and the original notes or claims sued upon were the only evidence of the owner's debt against Steele's estate; that, if the notes were due before the death of Steele, they were, on the 3d February, 1846, when letters were granted, barred by the statute of limitation, and their subsequent allowance by the administrator and approval by the probate judge would not make them valid claims against the estate of Steele, or constitute any reason for the administrator to procure an order to sell the property.

The list of debts attached to the petition for an order of sale is composed almost entirely of these very judgments charged by the plaintiff to have been under the control of Giddings, and, if not valid as judgments or approved claims against the estate of Steele, that fact would be very material in determining the motives and objects of the administrator and Giddings in procuring the order and making the sale under it of the certificate.

We believe the court erred in its ruling upon the validity of the judgments themselves, as well as of the approval of them by the probate judge. Suits had been instituted and process served on Steele, and he appeared by attorney in all the cases but one. The service of process on Steele and his appearance by attorney brought him within the jurisdiction of the court. (4 Tex., 245; 8 Id., 36.)

The death of Steele after this service and appearance did not operate to abate the suits, but the act of May 24, 1838, provided that suits for that cause should not abate; but, on suggestion of the death of the party, his representative would be made a party, (4 Tex., 485,) and if not made a party within a reasonable time, the cause, on motion, could

have been dismissed for want of proper parties.     (6 Tex., 400;) [Paschal's Dig., Art. 7, Note 225.]

The death of the defendant, Steele, was suggested, but without having made his representative a party or dismissing the causes as to Steele, the judgments were rendered against him and Hood for the debts sued on.   We are not prepared to say that these judgments are of themselves nullities and void, but, from the rulings of this court in a number of cases, we are inclined to the opinion that they were not void, but only voidable, and could have been annulled and set aside by a proceeding *coram nobis*, that is, by proceedings instituted in the same court where the voidable judgments were rendered, and showing the fact that Steele was dead at the rendition of the judgments.   Then they would have been set aside and the error corrected. (5 Tex., 289; 18 Id., 753; 21 Id., 154; 24 Id., 468; 1 J. J. Marsh., 29; 3 Littell, 145; 2 Tidd's Prac., 1107; Moke & Brother v. Brackett, at Austin term, 1866, *ante* p. 443.)

If a proceeding *coram nobis* had been instituted in the District Court of Washington county within a reasonable time after the dates of the judgments, and the fact of Steele's death made to appear before the rendition of the judgments, it would have been the duty of the court to correct the error, by setting aside the judgments and reinstating the causes on the docket, making the representative of Steele a party, and proceeding to judgment. (Martel v. Hernsheim, 9 Tex., 294;  5 Id., 294.)

If this course had been taken in the proper time, it is seen the judgments would have been set aside, but the causes would have been reinstated on the docket, and the notes of action would not have been barred by the statute of limitation; but judgments would have been rendered against the representative of Steele, as is to be inferred from the fact that there is no evidence to show the debts were not just; but that they were barred by limitation.

We are of opinion that the court was equally wrong in re-

spect to the force and effect of the allowance of these claims against the estate, and approval by the probate judge. It has been repeatedly decided by this court that such claims are valid and *quasi* judgments against the estate, that cannot be annulled in the county court, and only by a direct proceeding in the district court to set aside the approval on the grounds of fraud or mistake. (5 Tex., 487; 11 Id., 116;) [Paschal's Dig., Arts. 480, 1312, Notes 334, 485.]

This proceeding in the district court to set aside these *quasi* judgments, like any other judgment, must be instituted within a reasonable time after the rendition of the judgment or approval of the claim. It cannot be supposed that the creditor can at any length of time preserve the evidence of the justness of his claim, and show that it falls within some of the exceptions to the statute of limitation, when it appears on its face to be barred, although the rule is, that the administrator or contestant of the judgment must show that the claim does not fall within any of the saving exceptions to the statute of limitation. (11 Tex., 116; 14 Id., 315; 16 Id., 138; 17 Id., 138; 23 Id., 496, 254.)

The heir of the estate can institute these direct proceedings in the district court to annul and vacate an approval of a claim fraudulently made by the administrator in favor of the creditor. (18 Tex., 75.)

From these authorities, we are of opinion that the court erred in ruling that these judgments were nullities, and that the allowance and approval of them did not make them valid claims against the estate of W. H. Steele, and constituted no reason for the administrator to procure an order to sell the property. It was well calculated to mislead the jury upon the question presented to them of a fraudulent combination between the administrator and Giddings in procuring the order of sale, as well as the sale of the certificate under it; and we have doubts if that

charge did not have a great influence upon the jury in finding their verdict in the cause.

The court instructed the jury, that if the plaintiff is the only heir of the deceased, W. H. Steele, and the said cer_ tificate was the property of his estate, he would be entitled to recover the land, "unless it be shown that said certificate was purchased by the defendant, Giddings, from the administrator of the estate of W. H. Steele, deceased, in obedience to an order of the probate court of Burleson county, and that such purchase was made in good faith and without fraud; but if this be shown, you will find for the defendant." The rule is believed to be almost without an exception, that all contracts are presumed, *prima facie*, to be fair, and not unlawful or fraudulent, and the person who may attack them as tainted with fraud has the burden of proof upon him of proving the existence of the fraud by positive or circumstantial evidence. But here the rule is reversed, and the burden of showing that Giddings' purchase was in good faith is upon him, and the jury virtually instructed to find a verdict against him, unless he thus proves his good faith and fairness in the purchase of the certificate. There certainly was error in this part of the charge of the court to the jury.

We do not wish to be understood as holding that the plaintiff cannot be permitted to prove by competent evidence that the judgments in the District Court of Washington county were unjust, and fraudulently obtained, or that the approval of them was unjust, and fraudulently obtained, and by means of them that the order of sale was fraudulently obtained, and the sale consummated by a fraudulent combination between the administrator and Giddings to defraud and cheat the estate out of the certificate; for it has been often asserted that fraud will vitiate judgments, and transactions and proceedings based upon them, however authentic they may appear to be. (4 Tex., 276; 9 Id., 247; 24 Id., 468.)

But we do mean to say that the judgments of the District Court of Washington county of themselves, and the approval of them by the probate judge, are not invalid claims against the estate of Steele, deceased, as charged by the court; · nor are they facts or circumstances indicating fraud on the part of the administrator and Giddings, as the jury are lead to believe by the charge of the court.

The judgments of courts will not be set aside on mere surmise or suspicions of fraud, but there must be evidence to establish the fraud that does "naturally and reasonably tend to that conclusion." (1 Story's Eq., § 190; 1 Hov. on Frauds, 24; 18 Tex., 179, 765, 847.) And it must not be "legal and technical, but actual and positive, fraud in fact." (3 Pet., 341.) Fraud is not to be presumed, but must be proved.

If these judgments were justly due and not mere fabrications, a mere device of false claims against the estate of W. H. Steele, it is not perceived how fraud can be inferred from the fact that Giddings had them in charge for collection, or as his own property, and secured an order of the county court to sell the certificate to pay them, and at the sale became the purchaser of the certificate at a fair and the highest bid, without any unfairness among the bidders at the sale, or effort made by him or the administrator to stifle a fair competition at the sale. These circumstances would seem to lead "naturally and reasonably" to a different conclusion. If he had the control of these judgments for collection, they being just and not fraudulently obtained, it was Giddings' right and it was his duty to collect them, and, if necessary, to use all legal efforts on his part to procure an order of sale of property sufficient to pay them, and he had as much right to bid for the property at the sale as other people; and, if the sale were open and fairly made, without stifling competition among the bidders, we cannot see how these facts can be any evidence

of fraud.   They do not "naturally or necessarily tend to that conclusion," but in our estimation to the very reverse.

For errors in the proceedings below the judgment is reversed, and cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.