### ELI MITCHELL v. A. T. BASS.

1. According to the civil law a grant of land calling for a public road as a boundary conveyed no title to the soil covered by the road; the title to the road bed remained in the sovereignty, and on the abandonment of the road as a highway the land covered by it became vacant public domain, subject to entry, and did not belong, as it would at common law, to proprietors whose lands were bounded by the road.

APPEAL from Gonzales. Tried below before the Hon. J. J. Holt.

The facts of this case will be found in 26 Texas Reports, 372, in the report upon a former trial by this court.

*A. N. Mills*, for the appellant.—It is admitted on all sides, at the common law of England, upon the discontinuance of a high-way, the soil and freehold pass to adjacent owners ; and under that system, the plaintiff cannot maintain ejectment or trespass against an adjacent owner. But as these grants were extended anterior to the introduction of the common law, it is supposed that the rights of adjacent owners are controlled by the civil law, and that under that code the freehold of a discontinued highway or public road, still remains in the public and does not inure to adjacent owners. To show merely that such a proposition has heretofore been advanced, this court, in a former unpublished opinion, —— term, 186—, at Austin, cite 3 Kent, p. 558, Note, 9 ed., and Renthorp v. Bourg, 4 Mart., 97 ; and Kent cites the same case in 4 Mart., and also Dig. of Justinian, 43, 812, § 21, in support of his opinion. We can concede, without danger, the general rule of the civil law as laid down in 4 Mart., as applied to highways in use and not discontinued. The statement of that case by the judge shows the highway was then, and had been, constantly used as a public road for travelers and driving cattle, from two parishes in Louisiana to the Mississippi river. No one can read the opinion in Renthorp's case without concluding that the Roman law solely influenced the court in deciding the question ; and it was therein asserted the same rule, by adoption, prevailed in France, citing Denisart verbo Chemin ; and in Spain, 3 Partida, tit. 28, L. 6. Now, without denying the principle laid down by the above ancient Roman and Spanish authorities, it becomes necessary to inquire what class of public highways they alluded to. The *consular* or public highways of

ancient Rome and *los caminos publicos* of Hispania, built almost numberless centuries ago, were monuments which attest the grandeur of those masters of the world, and at an expense that moderns know but little of.

Let me instance Via Æmylia, made by the Consul Lepidus; Via Appia, called by way of eminence; Regina Viarum, built by the censor Appius; Via Valeria; Via Flaminia, made by Flaminus; Via Lata; and many other roads of inferior note, such as the Aurelia, Cassia, Domitiana, Ardetina, all of which were laid out, made and constantly kept in repair at public expense. Highways and works of almost equal prominence were once to be found in the old Spanish Peninsula, under the Roman Emperors; the public road leading to the massive arch of Torre-den-Barca, in Catalonia; the extended and expensive avenues leading to the bridge of Alcantara; the varied approaches to the colonnade of Zalamea de la Serena; and the celebrated roads about Tarragona and Segovia, are some which history mentions. As these, so were statues, baths, theatres, acqueducts and bridges constructed by the reigning prince, and dedicated to the public as in the case of public highways. These, and the like highways, were those alluded to by the Roman and Spanish law. Can these codes, in their aplication to the highways of the Empire and those of old Spain, be properly and intelligently applied to the public roads of an infant colony like that of ' Texas, without population or settlement? Those of the Empire and peninsula were as permanent as the labor of man could make them, while those with us must necessarily be such as the improvement and future setlement of the country would require. (Hatch v. Arnault, 3 La. Annual, 485.)

What manner of analogy can there be between the Roman highways meant by the digest and the public roads in the uninhabited colony of Texas or Lousiana?

We have seen the doctrine in Renthorp's case rests on the Roman and Spanish law, as interpreted by the Louisiana court;

and we have attempted to show that, while there were public highways in the Roman Empire and Spanish Peninsula, such as above named, of which the soil was public property, and that the rule of the Roman or Spanish law, as applicable to those ancient roads, cannot be applied to the roads in Texas, we now advert to the Spanish law authority cited by the court in Renthorp's case, to see if it maintains the proposition. 3 Partida, T. 28, L. 6, says: "Rivers, ports and public roads belong to all men in common; so that strangers coming," etc.

How this can be said to give "property in the soil" I cannot see; besides, the court, in Hatch v. Arnault, *ubi supra*, where Renthorp's case is greatly modified, say that the text of the Partidas authorizes no such conclusion as to the property in the soil; nor does the commentary of Gregorio Lopez give any such interpretation to it. (Ibid, 486.) Thus Renthorp's case, cited by this court in a former opinion, can have but little weight in the case at bar, aside from the fact that in the above case the highway was in constant use, while in the case in hand it has been abandoned and disused for many years, and actually fenced in for years.

The Louisiana court, in 3 Annual, rejected the doctrine in Renthorp's case, as applied to all highways in Louisiana; and it must be rejected with us, since its recognition without great qualification, at this time, would be an alarming disturbance of private right. That case maintains the following propositions: When the public interests require the direction of a road to be changed, or when it becomes useless and is abandoned by the public, adjacent owners resume dominion over the soil; that uniform acquiescence of the right to resume the land when it is required no longer for a road, is a fact entitled to great weight; that the roads, old and new, in Louisiana, as in Texas, are public roads, and not highways, as under the Roman law; that the public has no right in the soil after the public road shall have been abandoned, but it may be resumed by adjacent proprietors.

Public roads, under our own Legislature, have everywhere been altered and discontinued; but no one ever supposed, after discontinuance or abandonment, the soil remained in the public, because it was at one time a public road.

The conclusion we have come to is : under the civil law rule as modified by the courts of Louisiana, the soil of a public road or highway in Texas, laid out at the date of these grants, does not belong to the public, but the dominion remains with adjacent owners, discharged of the servitude.

If the soil and freehold of all the public roads designated by commissioners for distribution of lands, under the colonization laws of 1824–5, or those opened by the decrees of the Congress of Coahuila and Texas, as decree No. 22, (1 White's Dec., p. 498,) still continue in the public, like the highways of Rome, though abandoned and discontinued, the result is, adjacent owners are exposed to the craftiness of owners heretofore unknown. The *viæ publica* of the empire never discontinned, unless perhaps from conquest by northern nations, or the lapse of accumulated ages; while, with us, highways are changed, old ones abandoned and new ones made by the county authorities whenever circumstances require it.

But if the belt of land be held a highway, as under the civil law, and not to revert to adjacent owners on abandonment, how can it avail the plaintiff under the civil law rule ? For a road or street cannot be appropriated to private use, and a grant of either would be void. (The Mayor v. Metzinger, 3 Mart. La., 303.)

The right which the public has to pass over it cannot be lost by any length of time. (3 Partida, T. 32, L. 23.) This is also the rule of the English law, (Rex v. James Taunton, 2 Selw., N. P., 1362,) and of the French law. (Domat's Civil Law, Part 1, B. 3, T. 7, § 5.)

*Parker & Miller*, for the appellee.—At common law the presumption is that highways are laid out over lands belonging to individuals, and when the public ceases to use it, the land reverts back to the proprietors of the adjacent lands. (See Angel on Highways, page 299, § 314, and cases cited.)

But this presumption may be rebutted by proof, that the lands over which the road was laid out belonged exclusively to one of the adjacent proprietors, or that it was laid out over lands belonging to the government, and in that case the land would, when it ceased to belong to the public, revert to the original owner of the soil. (4 Mass., 427; 6 Peter's, 498; 8 Watts, Penn. R., 172; 1 Sumner, C. C. R., 21; 19 Wendall, 659.)

A grant of land at common law, bounded "by" or "on" or "along" a highway, has been held by several courts to carry the fee to the centre of the highway, if the grantor owned so far. (See 3 Maine R., 463; 1 Conn. R., 103.)

But this construction has not been uniform, and several courts of high authority have held the reverse. (10 Pick., 249; 11 Id., 193; 21 Id., 292; 8 Metcalf, Mass. R., 260; 4 Mason, Ct. Co., 349.)

On the other hand, it has been held uniformly by the courts, that a grant of land, bounded "by the side of," "by the margin of," "by the line of," a highway, or equivalent expressions, excludes the soil of the highway. (2 R. I. Reps., 508; 15 Johns, N. Y., 447; 5 Wharton, Penn. R., 18; 1 McMullin, S. C., 289; 4 Mass. C. C. R., 349; Howard R., 381.)

But these grants were made under the laws of Coahuila and Texas, by Antonio Navarro, commissioner to extend titles to settlers in De Witt's colony. Articles 179 and 180, Schmidt's edition of the laws of Spain and Mexico, page 43, declares that the fee of roads, rivers, harbors, etc., is in the government. Article 4, page 2, of same book, declares that no other code or system of laws shall have any force in Mexico. If, then, the fee of the road

was in the Republic of Mexico, at the time of the grant to Mitchell's vendors, it came in succession to the Republic and then to the State of Texas, and was subject to grant by either of them.

WALKER, J.—This action was brought by Bass against Mitchell, to try title to a strip of land, supposed to be about one hundred varas in width, lying between labors one and two, adjoining the town of Gonzales. Bass claims under a State patent, granted to him April 4, 1856. The jury found for the plaintiff, and the defendant appealed. The defense was a plea of not guilty, and a special answer setting up that the land was not subject to entry; that the labors numbers one and two called for a public highway as the boundary between them; that the highway had been dedicated to the public use by the authorities of Mexico, or the State of Coahuila and Texas; that by non-user, the public had lost the easement, and by the common law the road bed had reverted in fee to the contiguous owners. The case was appealed to this court and decided in 26 Texas Reports, 372. The defense, upon the facts proven, would have been good according to current authorities at common law; but the queries suggested by the court on the former hearing, to-wit: " Does the foregoing doctrine of the common law apply to grants extended by the government of Coahuila and Texas to colonists in 1831? Is the rule of the civil law in like cases the same as that of the common law? or, according to the former, does the soil of the public highway remain in the public? These are questions of some difficulty, but they must now be answered, for the law in force in 1831, at the time when the grants were made to labors numbers one and two, must govern this case. This was the civil law, and by that law the title remained in the sovereignty to all roads and highways; and upon abandonment of the service reverted to the public. If so, in this case the land was vacant, and Bass's patent from the State entitled him, upon the evidence in the case, to re-

cover. (See Arts. 179 and 180, Schmidt's Laws of Spain and
Mexico; 4 Martin, La., 97; 5 La., 132; 14 Tex., 173; 19
La., 62; 3 Annual La., 482.) There are no other matters ap-
pearing upon the record which require notice. The judgment of
the district court is affirmed, and restitution of the premises
ordered.

Affirmed.