## In re ELY AVE. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   June 17, 1915.)

MUNICIPAL CORPORATIONS ⬗649—OPENING AND EXTENDING STREET—AP-
POINTMENT OF COMMISSIONERS—STATUTES.

A proceeding whereby the board of estimate and apportionment of the
city of New York voted, under City Charter (Laws 1901, c. 466) § 970,
that the fee to land and premises required for the opening and extend-
ing of a street should be acquired by the city, and whereby, under sec-
tion 994, it authorized the acceptance of deeds of cession to land lying
within the lines of the street, and applied for the appointment of com-
missioners of estimate and a commissioner of assessment, where the
actual purpose was to enable an extension of an elevated railroad system
to be built in the street, supported on columns placed on the curb lines
and supporting girders 14 feet above surface of the street, in view of
section 990, requiring a street use to be kept open for or as part of a
public street forever, would not be approved, since, while, in the opening
of what is to remain a street, the acts of the board of estimate are
legislative and beyond court review, their power is confined to local
street purposes, as contrasted with general municipal objects.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
§ 1423;  Dec. Dig. ⬗649.]

Appeal from Special Term, Queens County.

In the matter of the application of the City of New York relative
to acquiring title, etc., for the opening and extending of Ely Avenue,
etc.  From an order (88 Misc. Rep. 320, 150 N. Y. Supp. 698) denying
its application for the appointment of commissioners of estimate and a
commissioner of assessment, the City appeals.  Order affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and
PUTNAM, JJ.

Joel J. Squier, of New York City (James Regan Fitz Gerald, of
New York City, on the brief), for appellant.

John Larkin, of New York City (Ralph S. Hull, of New York City,
on the brief), for respondents.

PUTNAM, J.  Under section 970 of the City Charter, the board of
estimate and apportionment voted that it deems it for the public in-
terest that the title to the lands and premises required for the opening
and extending of Ely avenue, from Jackson avenue to Nott avenue,
should be acquired by the city of New York.  This resolution contin-
ued:

"Resolved, that the title to be so acquired is hereby determined to be a
title in fee in such premises."

The corporation counsel was instructed to apply to the Special Term
of the Supreme Court for the appointment of commissioners.  The
board of estimate then fixed the area of assessment for benefit.  Under
section 994 of the City Charter it authorized the acceptance of deeds
of cession to land lying within the lines of the street. ˙The usual peti-
tion by the corporation counsel followed, showing the requisite notice
of application.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The outstanding feature is the disclosure that the proceeding, while nominally to "open" an old street and to correct some of its boundary lines, is in fact to prepare for placing through these blocks a section of a rapid transit line, being part of the system of elevated roads. When this appeared, the court denied the motion to appoint commissioners, from which the city has appealed.

The difficulty here is the actual purpose of this taking, according to the moving papers. It is to prepare for a new rapid transit railway, to be built in Ely avenue, which is to be part of the Steinway Tunnel rapid transit extension. The engineer of the board of estimate advised the immediate approval of the map, so as to "avoid delay in the railroad construction." Mr. Raisman, an engineer of the Public Service Commission, states in his affidavit:

"The part of the rapid transit line which runs along said Ely avenue is known as route No. 50. The type of railroad to be built is that of an elevated railroad, which will be supported by columns, placed generally on the curb lines of the said avenue. These columns will support girders which will carry the tracks, platforms, and other structures of the railroad, and will be so placed that there will be a clearance or head room underneath the said girders of not less than 14 feet to the surface of the roadway of said avenue."

The Legislature has wisely empowered the city of New York by condemnation to take either an easement or a fee. City Charter, § 970. This is not only because a uniform municipal ownership in fee of streets (as already exists in the streets from old Dutch highways) might simplify urban rights, but doubtless in view of the greatly increased uses "in, over, upon or under" metropolitan streets. If the question were reviewable by the courts, much may be said for the greater dignity, permanence, and artistic effect of streets and highways owned in fee, and therefore fully controlled by the authorities, as has been the immemorial practice of countries under the civil law. Mitchell v. Bass, 33 Tex. 259. By usage derived from England, the public has but a bare right of passage, under the theory which favored the proprietary right of the lord of the manor, as against the continental idea of a public thoroughfare owned, laid out, improved, and embellished by the state.

Here the petitioner's difficulty is not as to taking a fee. It is the method of such acquisition, and who pays the bill. These proceedings theoretically are to be local benefits. The cost incident to the commission, and even of the maps copied from the borough topographical bureau, are to be assessed back on lot owners. A street use (under City Charter, § 990) is to be "kept open for, or as part of a public street, forever, in like manner as the other streets in the city are and of right ought to be." Where these purposes are strictly pursued, the process of assessing the cost back upon the lot owners as "benefits" may be excessive.

However, in the opening of what is to remain a street, the board of estimate acts are legislative and beyond court review. But their power is confined to local street purposes, as contrasted with objects for the entire municipality. Plainly the court is bound to withhold approval from a proceeding which, instead of being based on a real street purpose, is taken with the object of bringing in an elevated railroad struc-

ture spanning from curb to curb, along a street already opened, accepted, and (save in respect to an insignificant strip) virtually dedicated to the municipality.

The order should be affirmed, with $10 costs and disbursements. All concur.