[Opinion delivered March 13, 1882.]

FREDERICK L. AND ISABELLA WEBSTER v. EMMA C. WILLIS ET AL.

(Case No. 569.)

1. HEIRS OF INTESTATE CAN SUE AND BE SUED, WHEN.—The heirs of an intestate, in order to be entitled to sue for the claim of their ancestor, must prove some fact bringing them within one of the exceptions to the rule; as lapse of more than four years since intestate's death without administration, or that administration has been closed and that there are no debts against the estate. Similar proofs must be made concerning the estate against the heirs of which it is proposed to bring suit on the ground of assets received.

2. PROBATE LAW.—JUDGMENTS CONTRARY TO, ERRONEOUS.—In such a suit against heirs, the law contemplates a judgment *in personam*

and not *in rem*, and the verdict and judgment in the present case for the amount of the debt, and subjecting the land thereto, followed by the decree that the defendants are not responsible for the amount of the judgment except to the extent of property received by them from the estate of their ancestor, are erroneous, being contrary to the provision of the probate law, that, if the creditor of the intestate shall establish his debt, he shall recover judgment against the heir, or other party in possession of the property, to the amount of his debt; *provided*, that such judgment shall never exceed in amount the value of the property so held by the heir or other party.

3. SPECIFIC LIEN NOT GIVEN.— The law in such a suit confers no specific lien on the property of the debtor.

4. UNKNOWN HEIRS — CITATION BY PUBLICATION.— Unknown heirs, when so sued, may be cited by publication. See McCampbell *v.* Henderson, 50 Tex., 611.

APPEAL from Polk. Tried below before the Hon. H. C. Pedigo.

*R. M. Franklin,* for appellants.

*James E. Hill,* for appellees.

WALKER, P. J. COM. APP.— This was a suit brought to the June term of the district court in 1874 for Polk county by Emma C. Willis, the defendant in error, who sues the unknown heirs of Emily Sanderson, deceased, alleging that she is the legal holder of a note for $123.50, bearing interest at ten per cent., given by the said Emily Sanderson to D. Willis, and payable to him or order. That Emma Sanderson died leaving real estate in Polk county, which vested in her said heirs, and that said debt is a statutory lien on the land. Said note was dated June 30, 1864, payable to D. Willis or order one day after date, bearing said interest of ten per cent. from date until paid.

The petition alleges that plaintiff is the legal owner and holder of the note sued on.

The petition alleges no fact showing any special lien

upon said land, but prays that all the property that said
Emily Sanderson died seized and possessed of be subjected
to the plaintiff's demand, and that plaintiff's lien on all
of said Emily Sanderson's property, which has descended
to and vested in defendants, be foreclosed, sold, and the
proceeds applied to the plaintiff's demand, and cost of
suit.   Attached to the petition was the plaintiff's affi-
davit for publication of citation for the unknown heirs
of Emily Sanderson; publication was made and served
according to article 5460, Pasch. Dig., which service the
defendants moved to quash for insufficiency, which mo-
tion was overruled.

The plaintiff filed several amended petitions, in conse-
quence of the demurrers of defendants to the plaintiff's
pleadings having been sustained by the court.  Finally, to
the amended petition last filed by the plaintiffs, the de-
murrers of the defendants seem not to have been pre-
sented, and the cause proceeded to trial.  The amendments
filed by the plaintiff had made as parties plaintiff the heirs
of D. Willis, deceased, and specified the land referred to
in the original petition as a certain tract of forty acres in
Polk county, conveyed by deed to Mrs. Sanderson by R.
S. Williamson in 1856.  The amendments alleged that
D. Willis, their (the plaintiffs') intestate, died in Polk
county on the ——— day of ———, A. D. 18—; that plaintiffs
are his only heirs at law; that there has never been any
administration, nor need for any, upon his estate.

Plaintiffs also alleged that there has been no adminis-
tration upon the estate of Mrs. Emily Sanderson, deceased;
that at the time of said Emily's death her estate was
solvent and there were no debts against it except the claim
here sued upon.

By amendment filed in June, 1875, the plaintiffs allege
that more than four years have elapsed since the death of
D. Willis next before the filing of this suit; that there are
no debts against his estate; that it is solvent and free of

debt; that the claim here sued upon is all the personal property belonging to D. Willis, deceased, and that it would not be subject to administration, if one should be opened, because there is no other personal or real property belonging to it from which any allowance contemplated by law could be made; and plaintiffs have no other property in their own right to meet such demand. Plaintiffs alleged that no allowance for their support or for their homestead, or for such exempted property as is by statute allowed them, has ever been allowed them from the estate of D. Willis, deceased; and that they have no other, or separate property, than the property of said estate.

Plaintiffs allege further that this suit was instituted to prevent the bar of the statute of limitations against this claim, and under a bond for the sum of $500 to secure creditors, if any existed, against the estate of D. Willis, in the faithful payment to them of such sum as may be received by these plaintiffs on account of the claim there sued upon. By a subsequent amendment filed October 7, 1875, plaintiffs alleged that Emily Sanderson died more than four years before the filing of this suit; that plaintiffs had made diligent search to ascertain the county in which Emily Sanderson had died, before commencing this suit, but were unable to do so, and were thereby debarred from obtaining administration upon her estate; and that the defendants, who have filed pleadings in this cause, are the only heirs at law.

The defendants appeal on the refusal of the court to grant them a new trial, and assign numerous grounds of error.

The thirteenth cause for error assigned is "that the judgment of the court is not warranted by the law or the verdict of the jury;" and it is assigned as error "that the court erred in overruling the motion of the defendants for a new trial."

These grounds of error are well taken.   The plaintiffs, in instituting this suit, have done so relying upon certain facts alleged by them, which, if true, might withdraw it from the operation of the general rule of law prohibiting them from bringing this suit in their capacity as heirs, and of enforcing the same against the heirs of another estate, instead of seeking to do so through the ordinary mode of administration of the estate of the deceased debtor.   See Patterson v. Allen, 50 Tex., 24, and authorities there cited; and see McCampbell v. Henderson, id., 610.

The right of action itself, in order to be maintained in behalf of the plaintiffs and against the defendants, required the support by proof of the exceptional facts stated in the petition and amended petitions of the plaintiffs, which warranted a judgment against the heirs of Mrs. Emily Sanderson.

This proceeding is not based upon any specific lien upon the land which was decreed to be sold; the cause of action, if one might be made, under the facts which existed when the suit was brought, rested upon a supposed cause of action *in personam* against the heirs of Mrs. Sanderson, by reason of an alleged acquisition by them of assets of her estate to the extent or value of which they as such heirs would be liable to creditors of their ancestors.   See The State v. Lewellyn, 25 Tex., 797; Yancey v. Batte, 48 Tex., 59; 18 Tex., 749; 15 Tex., 399; 14 Tex., 607.   The statement of facts shows that Mrs. Sanderson removed away from Polk county, where she lived at the date of the note, June 30, 1864; that she left near about that time; that she had but two children, a son and a daughter. On the trial it was proved that she is dead, but no intimation is afforded through the evidence as to when or where she had died, nor where she resided or lived, or was to be found at any time after her removal from Polk county; nor whether administration had been had upon

her estate, or whether administration was necessary to have been had thereon; nor was there any further evidence concerning her or her affairs, or of any effort made by the plaintiffs to ascertain such facts, or to obtain administration upon her estate.

The death of her son, Adolphus Sanderson, it was proved, occurred in 1863, whilst his mother still lived in Polk county. Whether he died leaving heirs does not appear. The daughter, Isabella Webster, appeared and answered. The plaintiffs proved the death of their ancestor, but did not establish where or when he died; and in respect to the affairs of his estate, or the administration thereof, whether there was then, or had been, administration or not, or whether administration had been necessary, or then was necessary; or indeed, as to any fact pertaining thereto, the statement of facts is wholly silent. There was no evidence concerning any of these matters, which, under the plaintiffs' allegations, it was necessary to show to entitle the plaintiffs to maintain this suit.

The general rule is laid down in the case of Giddings v. Steele, 28 Tex., 748, "That the heirs cannot sue in their own right as heirs for property of the estate; the executor or administrator must sue." "There are exceptions to this rule, as when the administration has been closed, or when there are no debts against the estate and no administration; in these cases, the reason of the rule not applying, the heirs may sue." Id., 748 (8 Tex., 142).

The following language is used in the opinion in Giddings v. Steele, *supra*, p. 748: "It would seem to be a safe rule not to permit the heirs to recover property by suit in their own right unless they make it appear that the administration has been closed, or that the condition of the estate is equivalent to that, by showing that there is no administrator appointed or acting, and that there are no debts against the estate." 9 Tex., 504; id., 15; 12 Tex., 285; 16 Tex., 335.

Clearly the plaintiffs have failed to bring themselves within the exceptions that entitle them to sue in this action; and it is equally clear that if they had even done so, they have failed to establish facts which entitle them to sue the heirs of Mrs. Sanderson under the exception before referred to, under which an administration of the estate could be dispensed with; or in case the same had been closed; or that four years had elapsed since the intestate's death, so as thus to enable the plaintiffs to sue the heirs instead of the administrator. '

The rule of law is, that the necessity for administration must be presumed in every case, unless facts be shown that make it an exception to the general rule (Green v. Rugely, 23 Tex., 539); and in the same case it is laid down "that, as a general rule, there must be an executor or administrator representing an estate to enable a creditor to bring a suit to subject the property of a deceased debtor to the payment of his debt." And see Ansley v. Baker, 14 Tex., 607; 20 Tex., 129.

The only other evidence besides that which has been stated introduced by the plaintiff was the note sued on, dated in 1864, and the conveyance of a tract of land in Polk county, consisting of forty acres, by deed from R. S. Williamson to Mrs. Sanderson, deceased, dated 30th July, 1856. Upon this evidence the jury found a verdict for the plaintiffs for $123.50, with interest at ten per cent. from the maturity of the note, making $262.30; and also found that the land is subject to the debt. Whereupon the court adjudged that the plaintiffs do recover from the defendants, as the only heirs at law of Emily Sanderson, deceased, the sum aforesaid, with ten per cent. interest and all costs of suit. Also decreed that the defendants are not responsible for the amount of this judgment, except to the amount of property received by them from the estate of their ancestor; and decreed the land aforesaid to be subject to and charged with the lien for the

payment of this judgment and costs of suit, and proceeded to condemn the same to be sold for the satisfaction of this judgment. The court adjudged that execution issue for the officers of the court against each party respectively for the cost by him in this behalf incurred.

It is conceived that the evidence in this case did not warrant the judgment in scarcely any respect. There does not appear to be a sufficient basis in the evidence to warrant a specific decree by judging the land subject to the debt sued on; adjudging it subject to a lien for the satisfaction of said debt. It was not so subject under a general charge upon property descending to the heir for the benefit of creditors. The creditor, if entitled to a remedy against the heir, could but subject the property in the hands of the heir to an ordinary execution; he had no specific lien to the exclusion of other creditors on any particular property in the hands of the heir. The State v. Lewellyn, 25 Tex., 799.

The evidence can hardly be said to warrant the conclusion that this property had come to the hands, possession or control of the heir, or at all; or that the heir or heirs, as the case might be, was at the time of suit invested with the title thereto. The utter want of any evidence explanatory of the affairs of the estate of Mrs. Sanderson seems to forbid the assumption that this land may not have been inventoried in the probate court having jurisdiction of her estate, and disposed of in the payment of debts against her estate, or that it may have been in some other mode disposed of in some legal manner, whereby the heirs failed to be invested with the title thereto. It is said in Yancey v. Batte, 48 Tex., 46, "that the responsibility of the heir for the debt or covenant of the ancestor is to be measured, not by the amount of the ancestor's estate which vested in him, but by the amount actually received."

The merits of this appeal do not appear to us to require

the mention of further reasons than those which have been given to reverse the judgment of the court below. Yet a consideration of section 45 of the probate law of 1870, as amended by section 4 of an act to amend said probate law, approved May, 1873 (General Laws, sec. 13, p. 110), may well be referred to in support of some of the deductions which we have drawn. It among other things provides, "That to hold the heir liable, the property sought to be subjected to the debt must, at the time suit is commenced, have been such as that if administration had been permitted, would have been assets in the hands of the administrator or executor, or liable to be reduced to possession as assets to pay debts." And it provides further for a judgment when the plaintiff shall be entitled thereto, different in character from that which was rendered in this case, as follows: "And if such creditor shall establish his debt, he shall recover judgment against the heir or other party in possession of the property to the amount of his debt; provided, however, that such judgment shall never exceed in amount the value of the property so held by the heir or other party;" thus indicating that the judgment to be rendered is against the defendant *in personam,* and negativing the idea of a proceeding *in rem* against the property by virtue of the lien thereon.

The same section in respect to liens provides as follows: "And it is hereby declared that the lawful and *bona fide* debts due by the testator or intestate are a lien and charge upon his property in the hands of the heir or legatee, or any other person whose possession or title to the same is not acquired *bona fide* and for a valuable consideration." This declaration of a charge or lien upon the property in the hands of an heir seems to be general and in favor of all creditors alike, but not giving a specific lien to any particular creditor and on any specified property. The purpose and scope of the statute seems

intended to charge the property generally with the payment of *bona fide* debts in the hands of any person other than such as have acquired it *bona fide* and for a valuable consideration. The section quoted above seems to contemplate that the judgment recovered shall be against the heir or other party in possession of the property, for the debt itself, unless such debt shall exceed in amount the value of the property held by the heir or other party; in which case the monied judgment would conform to the value of the property which the judgment, permitted by the statute to be rendered, shall never exceed.

The judgment in this case does not conform to this view of the statute; it is framed upon the theory that the proceeding is wholly *in rem*, and the decree in effect is a condemnation of the land as upon proceedings to foreclose a mortgage or other specific lien.

The law contemplates a personal judgment, as has been above explained, and to support which, evidence of the value of the land should have been given. If the land was subject to the debt by reason of the lien contemplated by section 45 above quoted, it would be subject to execution, levy and sale, as in cases of statutory liens given upon lands on judgments under the various laws of this state which have regulated the subject. Those laws conferred upon judgment creditors a general lien upon lands according to their various provisions, but they have never been construed to give to any individual creditor a special lien upon any particular piece of land, unless the same were obtained by levy, attachment or other appropriate means of obtaining precedence and priority.

We are of opinion that the judgment below ought to be reversed and the cause remanded.

REVERSED AND REMANDED.