NUMBER 13-98-163-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ____________________________________________________________________ 



WILLIAM WARREN CHAPMAN, III, ET AL., Appellants, 



v.

 

KING RANCH, INC., ET AL., Appellees. 

____________________________________________________________________ 



On appeal from the 28th District Court of Nueces County, Texas. 

____________________________________________________________________ 



OPINION

 

Before Justices Dorsey, Hinojosa, and Chavez(1)

 Opinion by Justice Hinojosa

 

 Appellants, the heirs and devisees of William and Helen Chapman, brought a trespass to try title suit against appellees to
establish their title to an undivided one-half interest in approximately 15,449.4 acres of land known as the "Rincon de Santa
Gertrudis" ("the Rincon"). Appellants also sought a bill of review to set aside a consent judgment entered in 1883 which
conveyed the Chapman family's interest in the Rincon to Richard King. The trial court granted appellees' motions for
summary judgment. By five issues, appellants contend the trial court erred in granting appellees' motions for summary
judgment. We reverse and remand. 

A. Historical Background

 The Rincon is located south of Corpus Christi, Texas and today covers parts of the King Ranch, the City of Kingsville,
and the Kingsville Naval Air Station. About 150 years ago, the State of Texas issued a land patent conveying the Rincon to
the heirs of Juan Mendiola. On July 23, 1853, they sold the Rincon to Richard King who on November 11, 1853 sold an
undivided one-half interest in the Rincon to Gideon Lewis. On April 25, 1856, King executed a deed to William Chapman,
conveying to him an undivided one-half interest in the remaining undivided one-half interest which King owned in the
Rincon for the sum of one hundred dollars. Thus, King and Chapman each owned an undivided one-fourth interest in the
Rincon. 

 Lewis died in 1855, and the administrator of his estate, Hamilton Bee, sold the estate's undivided one-half interest in the
Rincon to King and Chapman. In 1856, Bee executed a deed ("the Lewis Deed") conveying the property to King and
Chapman, jointly, for the sum of $1575 for which King gave his individual promissory note. Upon the execution of the
Lewis Deed, King and Chapman each owned an undivided one-half interest in the Rincon. According to appellants, the
Lewis Deed was not delivered to Chapman, but was delivered to King, or to King's agents and attorneys. The Lewis Deed
was not recorded until 1904, forty-eight years after it was executed. 

 Chapman died testate in 1859 and left all of his property to his wife, Helen Chapman. Upon probate of his will, Helen
became the owner of an undivided one-half interest in the Rincon. On April 11, 1879, she brought a trespass to try title suit
against King in the 25th District Court of Nueces County, Texas ("the 1879 Suit").(2) In this suit, Helen sought to affirm her
title and obtain possession of the undivided one-half interest in the Rincon which she had received from her husband. She
based her claim on the one-fourth interest deeded by King to Chapman and the one-half interest jointly purchased by King
and Chapman from the Lewis Estate. 

B. Helen Chapman's Will

 Helen had two children and five grandchildren. In 1881, she died while a resident of South Carolina. Her will directed
that "the entire rest and residue" of her property be divided into two equal parts. She granted a life estate in one part to her
son with the vested remainder to his three children. She granted a life estate in the remaining part to her daughter with the
vested remainder to her daughter's two children. Her will appointed Ellery Brayton and John Rankin as co-executors.
Brayton probated her will in South Carolina, and afterwards, Rankin probated the will in Nueces County, Texas. After
Rankin probated Helen's will, he was substituted as the plaintiff in the 1879 Suit. Attorney Robert J. Kleberg represented
Rankin in the 1879 Suit. During the pendency of the 1879 Suit, Richard King hired Kleberg as his attorney. 

C. The 1883 Judgment

 The 1879 Suit was settled by a consent judgment signed by the trial court on April 7, 1883 ("the 1883 Judgment"). The
judgment stated, in part: 

 Plaintiff herein is entitled to recover one-half of the land sued for by the plaintiff . . . but in consideration of the moneyed
judgment hereinafter set out and rendered in favor of the Plaintiff and against the Defendant Richard King, it is now here,
by consent of the parties herein, ordered adjudged and decreed by the court, that all the right title and interest of said estate
of Helen B. Chapman, deceased, in and to the said grant originally made to Juan Mendiola be vested in Richard King the
defendant herein, and that he be quieted in his possession of the said tract of land described in plaintiff's petition. . . . And
it is now here further ordered adjudged and decreed that the Plaintiff do now have and recover of and from the Defendant
Richard King the sum of . . . $5811.75 . . . . 



Critical to this case is the recitation that "Plaintiff herein is entitled to recover one-half of the land sued for." The judgment
set forth that Helen could only recover a one-fourth interest in the Rincon, that is, one-half of the one-half interest which
she had sought to recover from King. 

 After entry of the judgment, Kleberg wrote a letter dated April 21, 1883, advising Ellery Brayton (the co-executor of
Helen's will) that "The claim was for 7,749 acres, but we could only show or prove title in one-half, that is, 3,874½ acres, . .
. ." Appellants assert that the "one-half" which Kleberg claimed he could not prove involved the undivided one-half
interest in the Rincon conveyed to King and Chapman in the unrecorded Lewis Deed. 

 D. The Present Suit

 On April 20, 1995, appellants sued King Ranch, Inc., King Ranch Oil & Gas, Inc., and numerous other
defendants,(3)asserting they are the record owners of an undivided one-half interest in the Rincon. They alleged that the
1883 Judgment was the result of a "conspiracy" between Richard King, Robert J. Kleberg, and others to deprive Helen
Chapman's children and grandchildren of their respective life estates and estates in remainder in the Rincon by using,
selling, leasing for oil and gas, and otherwise disposing of, the undivided interests of these co-tenants, and concealing this
fraud, both actual and constructive. Appellants alleged, in part, that: (1) King and Kleberg entered the 1883 Judgment
knowing that John Rankin had no authority from the probate court to settle the suit; (2) the conspirators concealed from the
trial court that Helen's grandchildren were minors, that they were indispensable parties to the 1879 Suit, and that the
interests of these children as remaindermen were without the protection of a guardian ad litem; (3) Kleberg misrepresented
to Helen's co-executor, Ellery Brayton, that he could only prove title to one-half of the property that Helen sought to
recover in the 1879 Suit;(4) and (4) when Kleberg was acting for the Chapman Estate he was actually in the employ of
Richard King as an attorney, and no disclosure of this relationship was made to the Chapman family. 

 Based on these allegations appellants sought a bill of review as a direct attack to set aside the 1883 Judgment. In the
alternative, they asserted a trespass to try title claim, seeking to recover their title and possession to an undivided one-half
interest in the Rincon. In the alternative to that claim, they asserted an action to quiet title. 

E. Standard of Review

 A "no-evidence" summary judgment granted under Texas Rule of Civil Procedure 166a(i) is essentially a pre-trial directed
verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in
reviewing a directed verdict. Zapata v. Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.--Corpus Christi 1999, pet.
denied); Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998, pet. denied); Moritz v. Bueche, 980
S.W.2d 849, 853 (Tex. App.--San Antonio 1998, no pet.). We review the evidence in the light most favorable to the party
against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. Merrill Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Zapata, 997 S.W.2d at 747; Connell v. Connell, 889 S.W.2d
534, 537 (Tex. App.--San Antonio 1994, writ denied). A no-evidence summary judgment is improper if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Havner, 953 S.W.2d at
711; Zapata, 997 S.W.2d at 747. Less than a scintilla of evidence exists when the evidence is so weak as to do no more
than create a mere surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983); Zapata, 997
S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Havner, 953 S.W.2d at 711;Zapata, 997 S.W.2d at 747. 

 If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for
summary judgment can be sustained. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Weakly v. East, 900 S.W.2d
755, 758 (Tex. App.--Corpus Christi 1995, writ denied); Benavides v. Moore, 848 S.W.2d 190, 192 (Tex. App.--Corpus
Christi 1992, writ denied). 

F. The Reynolds' Motion for Summary Judgment

 By their first issue, appellants question whether a summary judgment motion which does not set forth any specific
grounds for summary judgment, but instead adopts and incorporates the summary judgment grounds alleged by a
co-defendant, satisfies the requirement of Rule 166a. Appellees Michael and Katherine Reynolds filed a motion for
summary judgment which did not state any specific grounds. Instead they adopted and incorporated by reference as their
motion the entire summary judgment motion filed by defendant King Ranch. Appellants contend that Rule 166a does not
allow a movant to adopt and incorporate, as its grounds for summary judgment, the grounds for summary judgment alleged
by a co-defendant. 

 On January 5, 1998, the trial court granted summary judgment for King Ranch and five of the six other defendants who
filed summary judgment motions. On January 13, 1998, the trial court granted summary judgment for Reynolds.
Appellants contend that because the January 13th judgment is the final judgment and that because the trial court should not
have granted judgment for Reynolds we must remand the case. We disagree. 

 The first sentence in Rule 166a(c) provides: "The motion for summary judgment shall state the specific grounds therefor."
Tex. R. Civ. P. 166a(c). This rule does not say that a defendant cannot adopt and incorporate by reference as its grounds
for summary judgment the summary judgment grounds alleged by a co-defendant. The case now before us is massive and
complex. The clerk's record consists of more than 4,000 pages of pleadings and summary judgment evidence. The King
Ranch's motion for summary judgment consists of about 1,000 pages, approximately one-fourth of the clerk's record. There
are approximately 200 defendants represented by five groups of attorneys. All of these defendants, including the appellees,
have a community of interest and identical defenses to appellants' claims. All of the defendants, except Exxon
Corporation, hold title under their co-defendant, King Ranch. These appellees, having the identical interest and defenses of
King Ranch, adopted its summary judgment motion in its entirety and incorporated the entire motion, including King
Ranch's summary judgment evidence. Had these appellees filed summary judgment motions identical to that of the King
Ranch, the appellants would not have been apprised of any new evidence or defenses. But, the clerk's record would have
been thousands of pages longer than it is now. 

 Further, rule 58 of the Texas Rules of Civil Procedure provides, "Statements in a pleading may be adopted by reference in
a different part of the same pleading or in another pleading or in any motion, so long as the pleading containing such
statements has not been superseded by an amendment as provided by Rule 65." Tex. R. Civ. P. 58 (emphasis added).
Appellees' joinder in and adoption of King Ranch's summary judgment motion gave appellants notice of the grounds upon
which they sought summary judgment. Because of the voluminous exhibits and evidence involved in this case along with
the common interest and defenses of the appellees, we perceive no problem with allowing the appellees to adopt and
incorporate by reference the grounds for summary judgment alleged by King Ranch. 

 In support of their contention, appellants cite McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337 (Tex. 1993),
which held that, consistent with the precise language of Rule 166a(c), a summary judgment motion "must itself expressly
present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the
motion."McConnell, 858 S.W.2d at 341. However, the issue of whether a movant can adopt and incorporate by reference
the summary judgment grounds alleged by a co-defendant was not before the court, and the court did not condemn this
practice as a violation of Rule 166a. 

 We hold the trial court did not err in allowing the Reynolds to adopt and incorporate, as their grounds for summary
judgment, the grounds for summary judgment alleged by their co-defendants. We overrule appellants' first issue. 

 G. Bill of Review

 By their third issue, appellants contend there are fact issues on the elements of their bill of review action. Appellants' bill
of review is a direct attack on the agreed judgment signed on April 7, 1883 by the 25th District Court of Nueces County,
Texas, in Cause No. 1279, styledHelen B. Chapman v. Richard King. Appellants argue the district court's judgment should
be set aside because of fraud. 

 A bill of review is an independent equitable action brought by a party to a previous suit who seeks to set aside a judgment
that is no longer subject to a motion for new trial or appealable. Caldwell v. Barnes, 975 S.W.2d 535, 537 (Tex. 1998). A
party seeking relief from a judgment by bill of review must plead and prove that he or she has a meritorious claim or
defense in the original suit. Transworld Fin. Servs. v. Briscoe, 722 S.W.2d 407, 408 (Tex. 1987). The petition must allege,
factually and with particularity, that the prior judgment was rendered as a result of fraud, accident, or wrongful act of the
opposite party or official mistake, and without any negligence on the part of the plaintiff. Id.

 Fraud, in relation to attacks on judgments, is either extrinsic or intrinsic, and only extrinsic fraud will support a bill of
review. Id. Extrinsic fraud is fraud that denied a party the opportunity to fully litigate at trial all the rights or defenses that
the party was entitled to assert. Tice v. City of Pasadena, 767 S.W.2d 700, 702-04 (Tex. 1989). "Extrinsic fraud is
'collateral' fraud in the sense that it must be collateral to the matter actually tried and not something which was actually or
potentially in issue in the trial." Montgomery v. Kennedy, 669 S.W.2d 309, 312 (Tex. 1984). "Intrinsic fraud, on the other
hand, is inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved
in the original action, or where the acts constituting the fraud were, or could have been litigated therein." Id. at 313. An
allegation of attorney negligence is not a sufficient ground to support a bill of review. Transworld, 722 S.W.2d at 408. A
bill of review petitioner who alleges that he suffered an adverse judgment because of the fraudulent or wrongful acts of his
attorney is not excused from the necessity of pleading and proving extrinsic fraud on the part of his opponent. Id. 

1. Extrinsic Fraud

 Appellants contend they produced more than a scintilla of evidence to show that Richard King committed extrinsic fraud
on Helen Chapman. Appellants assert there is a fact issue regarding whether King committed extrinsic fraud by using
Robert Kleberg to subvert the rights of Helen Chapman and her grandchildren. Appellants produced summary judgment
evidence that Kleberg subverted their rights by "asserting control over the litigation after Helen's death, failing to give the
Chapman grandchildren notice, falsely stating he could only prove title to half of the Rincon de Santa Gertrudis, falsely
stating Rankin was the sole executor, and failing to record the deed from the Lewis estate for over forty years." 

 Appellees, citing Transworld, argue that appellants' reliance on Kleberg's alleged wrongful conduct does not constitute
evidence to raise a fact issue sufficient to show that King procured the 1883 Judgment through extrinsic fraud. While the
appellees' reliance onTransworld is correct, their interpretation of appellants' evidence is incorrect. While appellants tie
Kleberg into the fraud they suffered, they do not base their claims solely on him, but rather on the dynamics that existed
between Kleberg's concurrent representation of Helen Chapman and Richard King, the actions of each, and their effect on
the 1883 consent judgment. 

a. Kleberg's Representation

 Appellants presented summary judgment evidence that Kleberg represented King through the depositions of Bruce
Cheeseman and Tom Lea, and a letter written by Kleberg to his parents. 

 In his deposition, Cheeseman(5) was asked about an article written by Ron George entitled "King and Kleberg fought
widow for her half share of King Ranch," published in the Corpus Christi Caller Times on August 23, 1992. In the article,
Caleb Coker is quoted as saying: 

Richard King made his ex-partner's widow litigate to the death rather than pay her a penny. . . . And by modern standards,
Kleberg should have been disbarred. 



According to George, "Coker's version sets King Ranch archivist Bruce Cheeseman's teeth on edge, although he doesn't
dispute the facts." According to the article, Coker's statement drew the following response from Cheeseman: "Clearly,
Kleberg was looking after the interest of his in-state client, versus the interests of his out-of-state client." When Cheeseman
was asked in his deposition about this quote, he stated: 

 A: I don't recall the quote in that -- in that -- in that language, no. And I certainly don't agree with his characterization that
this matter sets my teeth on edge. I had -- I had corresponded and worked with Mr. Coker for a number of years helping
him understand this and as -- as part of historical scholarship and I think Mr. George to use that phrase "teeth on edge" is a
little newspaper sensationalism. 

 

 Q: Setting apart "teeth on edge," he quotes you as saying, "Clearly Kleberg was looking after the interest of his in-state
client versus the interest of his out-of-state client?" 

 

 A: That's what he quotes me as saying, yes. 

 

 Q: Clearly looking after King rather than Chapman? 

 

 A: That's what he quotes me as saying, yes. 

 

 Q: Do you deny making that statement? 

 

 A: In that precise language, yes. 

 

 In 1951, Tom Lea was commissioned by the King Ranch to prepare an illustrated history of the Ranch to commemorate the
centennial of the Ranch's founding in 1853. The resulting two-volume book entitled, The King Ranch, contains a
recreation of a conversation between Robert Kleberg and Richard King in 1881 in which King retained Kleberg's legal
services for $5000 a year. In 1881, Kleberg was also representing Helen Chapman against King. 

 In a letter dated July 24, 1881, Robert Kleberg wrote to his parents: ". . . on the way [King] asked us to attend to his legal
business for him." In 1881, Kleberg was a partner in the firm of Stayton, Lackey & Kleberg. The record also contains
evidence that Kleberg represented King in March 1882 in the case of Sobrinos v. Chamberlain, 13 S.W. 634 (Tex. 1890). 

b. Pleadings in Cause No. 1279

 Helen Chapman pleaded that she was the legal and rightful owner of two tracts of land, one being 240 acres patented to
W. W. Chapman as assignee of Jeremiah Harrison, and the other being an undivided one-half interest in the Rincon. Half
of this undivided one-half interest was conveyed to her husband, William Chapman, by Richard King and his wife. The
other half of this undivided one-half interest was purchased(6) at an administration sale from the Estate of Gideon Lewis.
She alleged that Richard King on January 7, 1877 entered upon the premises and dispossessed her. She prayed for
restitution of those lands, the profits derived from them, and a partition of her one half in the Rincon tract. Her pleadings
showed that she was represented by J. W. Slayton, W. Campbell & Givens when the litigation began. 

 Richard King filed defensive pleadings by his attorneys F. E. MacManus & Pat. O'Doeharty. He first denied the
allegations generally, and then pleaded specifically to Mrs. Chapman's charges. King traced his purchase of the Rincon. On
July 25, 1853, he purchased from the heirs of Juan Mendiola the three and one-half leagues of land known as the Rincon.
That on November 11, 1853, he sold an undivided one-half interest to Gideon K. Lewis, and on April 25, 1856, he and his
wife sold an undivided one half of his remaining interest in that tract to W. W. Chapman. Richard King acknowledged that
he conveyed the one-quarter interest to Chapman, but contended that while the deed of conveyance purports to have been
made for the sum and consideration of one hundred dollars, Chapman did not pay to him or his wife the one hundred
dollars specified in the deed. King also admitted that in July 1856, he and Chapman bought the one-half interest in the
Rincon from the Estate of Gideon Lewis for the sum of $1575 for which King gave his individual promissory note. King
denied that Chapman ever paid his portion of the purchase money. He further alleged that Chapman asked to be released
from making such payment in consideration of his surrendering to King his right, title, interest, claim, and demand in the
land. In his answer, King stated: 

 That prior to said suit, to wit: in the latter part of the year 1856, or the early part of 1857, the said W.W. Chapman, who as
Quartermaster in the United States Army was, and for a long time before had been, stationed at Corpus Christi, Texas,
received orders to go to California. That the said Chapman while engaged in making preparations to go to California,
sometime prior to the month of March, 1857, sent a verbal message to this defendant to the effect that from want of means
for that purpose he was unable to make the necessary payments on his said pretended purchases of an interest in the said
tract of land from this defendant, and his wife on the 25th of April 1856 with him as aforesaid on the 1st of July, 1856, and
asking to be released from any further liability for said payments, and that in consideration of such release, he (Chapman)
would surrender all his right title and interest in and for the said tract of land to this defendant, and also that he the said
Chapman would in a few days write to this defendant to the same effect. That this message was conveyed to this defendant
by one J.J. Richardson since deceased. That a short time afterwards the said W.W. Chapman did so write to this defendant,
and his letter to the same effect precisely as his aforesaid verbal message and dated some time prior to the month of March,
1857, was received by defendant and the proposition therein contained as aforesaid, accepted and acted upon by this
defendant. That in consequence of said verbal message and letter, this defendant paid and caused to be paid on his
individual account the whole of the purchase money for the interest of the said Gideon K. Lewis's estate in the said tract of
land as aforesaid, and have ever since openly and notoriously treated and regarded the pretended joint ownership of the said
Chapman with him in the said tract of land, arising from the deeds aforesaid, as wholly closed and ended. 

 

 That the said letter was seen and its contents noted by James Walworth, since deceased, who was then in the employment
of this defendant. That said Walworth specially called defendant's attention to said letter, and to the importance of
preserving the same. That said letter was accordingly carefully filed away, but that during the confusion incident to a hasty
removal of his effects from the ranch of defendant, caused by a raid during the late Civil War, the said letter was lost, and
cannot now be found although diligent search therefore has been continued since the institution of this suit; . . . . 

 

King further pleaded that he gave a promissory note with two sureties to obtain the Lewis deed and executed a mortgage to
the administrator, not joined in either by W. W. Chapman, and that King and his sureties were sued on that note in 1860 in
the District Court of Cameron County in Cause No. 6401/2, styled Hamilton P. Bee, administrator, vs. Richard King,
Edward Downey, and Milford P. Norton. King claimed the suit was settled by William G. Hale and Francis J. Parker
paying the amount of the debt and King transferring to Hale and Parker a tract of land known as the Santa Rosa. 

 King's pleadings went into detail as to each of his defenses, but also claimed he sued to confirm his "imperfect and
inchoate" title in the disputed tract in May, 1860, as a result of the Board of Land Commissioners having lost all the papers
of his original claim as assignee of the heirs of Juan Mendiola. That the suit was pending in Nueces County, Cause No.
580, from May 24, 1860 until April 6, 1868, and during that time no right of intervention was claimed by the Chapmans or
anyone for them. 

 In the final judgment, Mrs. Chapman received title to the 240 acre tract she claimed, as well as an undivided one-fourth
interest in the Rincon, which she sold to King in the judgment. 

c. Richard King's Fraud

 The following evidence produced by appellants, coupled with and compared to the pleadings in Cause No. 1279, raises
more than a scintilla of probative evidence to raise a genuine issue of material fact regarding the extrinsic fraud committed
by Richard King: 

 (1) The production of William Chapman's leather-bound account book which sets out the following in 1856: 

 Land purchased of Capt. King 100.00 



 Acknowledgment & recording 

 of deed 4.00 



 ½ of Lewis interest in 

 Santa Gertrudis 787.50 



Chapman's notations in his account book, which was not produced in cause no. 1279, definitely puts into question King's
claim that Chapman did not pay him for his share of the Lewis deed. 

 (2) King was unable to produce the alleged letter written by William Chapman relinquishing to King his land from the
Lewis deed. 

 (3) A letter, dated February 23, 1886, by F. E. MacManus, Richard King's attorney in cause no. 1279, to Richard King's
widow, Henrietta King,(7) returning various papers including the original deed from "H. P. Bee administrator of Gideon K.
Lewis, of the one-half of 3 ½ leagues to Richard King, conveyed by him to said heirs, and dated 1st day of August, 1856."
King's alleged inability to produce the Lewis deed in 1881 when requested by Helen Chapman is highly questionable when
his own attorney was in possession of the deed five years later when it was returned to King's widow. 

 (4) The Lewis deed was filed in 1904 by Caesar Kleberg, nephew of Robert Kleberg, as Secretary of the Kleberg Town
and Improvement Company. Robert Kleberg was President of the Kleberg Town and Improvement Company. Although
King admitted the existence of the Lewis deed in his answer to Helen Chapman's pleadings in cause no. 1279, without the
deed as the necessary proof of title, King's allegations that Chapman wanted out of the land purchase and had not paid his
share had the potential of bearing more weight before the court in cause no. 1279. 

 (5) Appellants contend John Rankin, testamentary executor with will annexed, did not have authority to settle cause no.
1279 without an order from the probate court. The record shows that Rankin filed: (a) a petition with the Hon. J. F.
Simmons, Presiding County Judge, on November 7, 1882, to have Helen Chapman's will admitted to probate; (b) a bond
and oath with the probate court on November 23, 1882; and (c) an inventory of the estate on January 15, 1883. The Texas
Revised Civil Statutes, article 1934, required: 

 whenever an executor or administrator may deem it for the interest of the estate he represents to purchase property or to
exchange any property, or take any claims or property for the use and benefit of the estate in payment of any debt due the
estate, or to compound bad or doubtful debts due the estate, or to make compromises or settlements in relation to property
or claims in dispute or litigation, it shall be his duty to present an application in writing to the county court, at a regular
term thereof, representing the facts; and if the court upon hearing of such application, shall be satisfied that it will be for
the interest of the estate to grant the same, an order to that effect shall be entered upon the minutes, setting forth fully the
authority granted. 



Act of Feb. 21, 1879, 16th Leg., tit. XXXVII, ch. 11 (current version at Tex. Prob. Code Ann. § 234 (Vernon Supp. 2000)).
The record contains no evidence: (a) that Rankin applied to the probate court for permission to settle cause no. 1279 and (b)
that the probate court authorized Rankin to agree to the consent judgment. 

 (6) Kleberg's letter of April 23, 1883 to Ellery Brayton, the executor of Helen Chapman's will in South Carolina, which
explains cause no. 1279 as follows: 

 That the suit of Helen B. Chapman vs. Richard King was disposed of at the last term of our district court which has just
closed. John Rankin Executor was made party plaintiff in the suit and judgment was rendered by consent of parties as
follows, it was considered by the court that half of the land sued for which was the half of 3½ leagues could be recovered
by the plaintiff which would be 3874½ acres -- also a tract of 240 acres and in consideration of a moneyed judgment for
$5811.75 against the Defendant Richard King -- the title was vested to him to the 3874½ acres, and the title to the 240
acres was recovered in favor of the Estate of Helen B. Chapman thus giving Judgment in favor of the Estate for $5811.75 . .
. . 



This letter shows that the court in cause no. 1279 recognized only the land that Richard King and his wife gave to William
Chapman as belonging to Helen Chapman. The court did not recognize William Chapman's one-half interest in the land set
out in the Lewis deed. The court's ruling is questionable given the notations in William Chapman's account book that he
paid for the land and Richard King's inability to produce the alleged letter from William Chapman relinquishing his share
of the land. 

 (7) On November 3, 1880, Stephen Powers of the law firm of Powers & Wells, wrote to Richard King: 

 I don't see how you are to get over Mrs. Chapman's title to the Santa Gertrudis interest. Hewlett (?) being dead, and no one
_____ to any relinquishment of title by Chapman in his lifetime. It is my advice under these circumstances, to compromise
if you can. 

 

Powers's letter recognizes Helen Chapman's title and directly conflicts with Kleberg's claim of inability to prove title to any
portion of land bought by William Chapman under the Lewis deed. 

 The foregoing evidence reasonably puts into question Richard King's claim to the entirety of the land in the Lewis deed,
Robert Kleberg's alleged inability to prove Helen Chapman's land title, and Kleberg's legal loyalty to his clients. Therefore,
we conclude appellants have produced more than a scintilla of probative evidence to raise a genuine issue of material fact
of extrinsic fraud. 

H. Limitations

 In their fourth issue, appellants contend they presented to the trial court sufficient evidence to raise a genuine issue of
material fact that the four-year statute of limitations for their bill of review action was tolled. 

 A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively
establish that defense. KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).
Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it
applies. Id. If the movant establishes that limitations barred the action, the nonmovant must then adduce summary
judgment proof raising a fact issue in avoidance of the statute of limitations. Id. The determination of when a cause of
action accrues is a question of law. Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988). 

 The residual four-year statute of limitations governs bill of review actions. Tex. Civ. Prac. & Rem. Code Ann. § 16.051
(Vernon 1997);Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex. 1998). In civil cases, the date the court signs a judgment
begins the time for filing the documents in connection with an appeal. Law v. Law, 792 S.W.2d 150, 153 (Tex.
App.--Houston [1st Dist.] 1990, writ denied). 

 Because appellants have produced more than a scintilla of probative evidence to raise a genuine issue of material fact of
extrinsic fraud, we conclude appellants have avoided the four-year statute of limitations for bills of review. See Tex. Civ.
Prac. & Rem. Code Ann. § 16.051 (Vernon 1997); Caldwell, 975 S.W.2d at 538; Defee v. Defee, 966 S.W.2d 719, 722
(Tex. App.--San Antonio 1998, no pet.); Lawrence v. Lawrence, 911 S.W.2d 443, 448 (Tex. App.--Texarkana 1995, writ
denied). 

 Accordingly, we hold the trial court erred in granting appellees' motions for summary judgment as to appellants' bill of
review action to set aside the 1883 consent judgment. We sustain appellants' third and fourth issues. 

I. Trespass to Try Title

 By their second issue, appellants assert in their trespass to try title action(8) that the 1883 Judgment did not bind Helen's
heirs because her five grandchildren were not: (1) notified that the court in the 1879 Suit was adjudicating their property
rights; (2) notified of the final hearing in the 1879 Suit; (3) notified of the 1883 Judgment; (4) represented by a guardian ad
litem, and (5) were not parties to the 1883 Judgment. Appellants contend that appellees are falsely claiming title and the
right of possession to their one-half interest of the land in the Lewis deed. 

 In appellees' motions for summary judgment, appellees characterize the claim of trespass to try title as an allegation "that
because Mrs. Chapman's heirs were not made parties to cause no. 1279, the 1883 Judgment is not binding upon them and
thus did not adjudicate their rights in the Rincon," or, simply that the judgment in cause no. 1279 did not divest the
Chapman grandchildren of their interest in the Rincon; thus, they have superior record title. 

 Given the evidence reviewed in our determination of the bill of review action, we conclude appellants have produced more
than a scintilla of probative evidence to raise a genuine issue of material fact as to their trespass to try title action.
Accordingly, we hold the trial court erred in granting appellees' motions for summary judgment on appellants' trespass to
try title action. We sustain appellants' second issue. 

J. Adverse Possession

 In their fifth issue, appellants contend appellees failed to conclusively prove that adverse possession wiped out the
Chapman grandchildren's interest in the Rincon. Appellees assert they have acquired appellants' interest in the Rincon
through the ten and twenty-five year adverse possession statutes and that they have "clearly repudiated appellants' alleged
interest in the Rincon." 

 Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of
right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann. § 16.021
(Vernon 1986). A co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated
the title of his co-tenant and is holding adversely to it. Todd v. Bruner, 365 S.W.2d 155, 160 (Tex. 1963). Notice of
repudiation must be communicated to the non-possessory co-tenant either by a declaration of the adverse claim or by acts
of such unequivocal notoriety asserting the adverse claim that the non-possessory co-tenant is presumed to have notice of
the claim. Poenisch v. Quarnstrom, 361 S.W.2d 367, 369 (Tex. 1962). However, when the adverse occupancy and claim
of title "is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the
occupant, the law will raise the inference of notice to the co-tenant out of possession." Amador v. Berrospe, 961 S.W.2d
205, 208 (Tex. App.--Houston [1st Dist.] 1996, writ denied). 

 Whether there has been a repudiation of a non-possessory co-tenant's title is a question of fact. Walton v. Hardy, 401
S.W.2d 614, 616 (Tex. Civ. App.--Waco 1966, writ ref'd n.r.e.). Because a fact issue exists as to whether there has been a
repudiation of appellants' title in the Rincon, we hold the trial court erred in granting appellees' motions for summary
judgment on the issue of adverse possession. We sustain appellants' fifth issue. 

 We reverse the trial court's orders granting appellees' motions for summary judgment and remand this case to the trial court
for further proceedings. 







 

 FEDERICO G. HINOJOSA 

 Justice 





Dissenting Opinion by Justice J. Bonner Dorsey. 



Publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

the 11th day of January, 2001. 

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 49.09(f) (Vernon 1998).

2. This suit was designated as Cause No. 1279. The pleadings on file in Cause No. 1279 state that Helen B. Chapman was
first ejected by Richard King about two years prior to the filing of the suit.

3. All of the defendants are persons or entities who have owned or claimed to own, or now own or claim to own, any lands
or interests in lands which are or were a part of the original Juan Mendiola Survey as described by the patent issued to his
heirs by the State of Texas.

4. Appellants claimed that this representation was false because: (1) title to one-half of what Helen claimed in the 1879
Suit was established by the deed from Richard King to William Warren Chapman which conveyed an undivided one-fourth
interest in the Rincon to Chapman; this deed was recorded; (2) King's pleadings in the 1879 Suit showed that the deed to
the other one-half of what Helen claimed -- the deed from the Lewis Estate jointly to King and Chapman (Lewis Deed) --
existed and that the conveyance had occurred; (3) even though the Lewis Deed was at all times in King's possession it was
not filed for record until 1904, some forty-eight years after it was executed and some twenty-one years after the 1883
Judgment. 

5. Bruce Cheeseman is the King Ranch archivist and historian.

6. William Chapman and Richard King purchased this property together. 

7. Richard King died on April 14, 1885.

8. A trespass to try title action is a procedure by which rival claims to title or right of possession may be adjudicated. Yoast
v. Yoast, 649 S.W.2d 289, 292 (Tex. 1983). 







NUMBER 13-98-163-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ___________________________________________________________________ 



WILLIAM WARREN CHAPMAN, III, 

ET AL. , Appellants, 



v.

 

KING RANCH, INC., ET AL. , Appellees. 

___________________________________________________________________ 



On appeal from the 28th District Court

 of Nueces County, Texas.

 ___________________________________________________________________ 



DISSENTING OPINION

 

Before Justices Dorsey, Hinojosa, and Chavez

 Dissenting Opinion by Justice Dorsey





 I respectfully dissent. Appellants seek a bill of review as a direct attack to set aside a consent judgment entered in 1883.
They contend that the judgment must be set aside because Richard King and his attorney, Robert Kleberg, committed
extrinsic fraud in securing the judgment. The trial court granted a no-evidence summary judgment for the appellee, King
Ranch. 

 For the purposes of this dissent I will briefly outline the origin of the consent judgment. Richard King bought the Rincon
in 1853 and sold an undivided one-half interest to Gideon K. Lewis. In 1856, King conveyed to William Chapman an
undivided one-half interest in the remaining undivided one-half interest which King owned in the Rincon. Thus King and
Chapman each owned an undivided one-fourth interest in the Rincon. Lewis died in 1855, and the administrator of his
estate, Hamilton Bee, sold the estate's undivided one-half interest in the Rincon to King and Chapman. In 1856, Bee
executed a deed (the Lewis Deed) conveying the property to them jointly. At that point King and Chapman each owned an
undivided one-half interest in the Rincon. According to appellants the Lewis Deed was not delivered to Chapman, but was
delivered to King, or to King's agents and attorneys. The Lewis Deed was not recorded until 1904. When Chapman died
he left his interest in the Rincon to his wife, Helen B. Chapman. Thus she became the owner of an undivided one-half
interest in the Rincon. 

 In 1879, she brought a trespass to try title suit against King (Cause No. 1279) in which she sought to recover title and
possession of the undivided one-half interest in the Rincon which she had received from her husband, along with other
lands in South Texas. She based her claim on her share of the Rincon on the one-fourth interest deeded by King to
Chapman and the one-half interest jointly purchased by King and Chapman from the Lewis estate. After Helen died John
Rankin was substituted as the plaintiff in the suit. Attorney Robert Kleberg represented Rankin in the suit. During the
pendency of the suit King hired Kleberg as his attorney. In 1883, the suit was settled, resulting in the consent judgment
which appellants now seek to set aside. The consent judgment provided that Helen could only recover a one-fourth interest
in the Rincon, that is, one-half of the one-half interest which she had sought to recover from King. The judgment also
provided for a sale of that land from Chapman to King and a recovery of other land by Chapman from King. 

 In the suit now before us King Ranch moved for summary judgment under Rule 166a(i), arguing that there is no evidence
to support one or more elements of the bill of review action and that there is no evidence of extrinsic fraud. King Ranch
also moved for summary judgment on the grounds that the four-year statute of limitations barred the bill of review action
and that the consent judgment barred appellants' claims for trespass to try title and action to quiet title. 

Appellants' Response

 To The Summary Judgment

 

 In their response appellants stated that the essential element of their claim is whether there is evidence that the Estate of
Helen B. Chapman was prevented from presenting its meritorious claim in Cause No. 1279 because of extrinsic fraud on
the part of Richard King. They asserted that extrinsic fraud occurred when King "corrupted" Robert Kleberg, the attorney
of record for the plaintiff in Cause No. 1279, and "together King and Kleberg entered the Consent Judgment." 

 A trial court must grant a no-evidence summary judgment motion unless the nonmovant produces more than a scintilla of
evidence raising a genuine issue of material fact on the challenged elements. Design & Fabrication, Inc. v. Pennzoil
Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.). Thus in the context of a no-evidence
summary judgment the party with the burden of proof at trial has the burden of proof in the summary judgment
proceeding.See id. Because appellants failed to produce more than a scintilla of evidence on extrinsic fraud I must dissent. 

Bill of Review

 The grounds upon which a petitioner can obtain a bill of review are narrow, because the procedure conflicts with the
fundamental policy that judgments must become final at some point. Transworld Fin. Servs. Corp. v. Briscoe, 722 S.W.2d
407, 407 (Tex. 1987);Alexander v. Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950). Generally bill of review relief is available
only if a party has exercised due diligence in pursuing all adequate legal remedies against a former judgment and, through
no fault of its own, has been prevented from making a meritorious claim or defense by the fraud, accident, or wrongful act
of the opposing party. Wembley Inv. Co. v. Herrera, 11 S.W.3d 924, 927 (Tex. 1999). 

 In relation to attacks on final judgments, fraud is classified as either extrinsic or intrinsic, and only extrinsic fraud will
entitle petitioners to bill of review relief. Tice v. City of Pasadena, 767 S.W.2d 700, 702 (Tex. 1989); Montgomery v.
Kennedy, 669 S.W.2d 309, 312 (Tex. 1984). The Montgomery court stated that: 

 extrinsic fraud is that fraud which denies a losing litigant the opportunity to fully litigate his rights or defenses upon trial.
Extrinsic fraud is "collateral" fraud in the sense that it must be collateral to the matter actually tried and not something
which was actually or potentially in issue in the trial. Extrinsic fraud is conduct that prevents a real trial upon the issues
involved. Intrinsic fraud, on the other hand, is inherent in the matter considered and determined in the trial "where the
fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could
have been litigated therein." 



Montgomery, 669 S.W.2d at 312-13. 


Richard King's Alleged Extrinsic Fraud

 

 To me the critical issue is whether appellant presented summary judgment evidence to support his claim that Robert
Kleberg, the lawyer for the Chapman Estate in the 1879 lawsuit against King, sabotaged his client's case to the advantage of
the opponent, Richard King. The only way appellant can avoid the four-year statute of limitations for Bill of Review
Actions is by the proof of extrinsic fraud by the opponent, Richard King, in that ancient litigation. The fraud alleged is
that King retained Kleberg while he was representing Chapman, and Kleberg, being so employed by King, subverted
Chapman's case to King's advantage, necessitating an unfavorable settlement relinquishing Chapman's one-half interest that
had been acquired from Lewis. 

 The majority relies on several pieces of evidence which is claimed constitute probative evidence of King's extrinsic fraud:
(1) William Chapman's notations in his leather-bound account book; (2) a letter from Stephen Powers; (3) evidence that
King was unable to produce an "alleged" letter written by William Chapman relinquishing to King his land from the Lewis
Deed; and (4) a letter by King's attorney in Cause No. 1279 to King's widow returning the original Lewis Deed. None of
these were mentioned in appellants' Response to the Motion for Summary Judgment, and the trial court's attention was not
directed to such evidence to avoid the "no evidence" motion for summary judgment. Fact issues not expressly presented to
the trial court shall not be considered on appeal as grounds for reversal. City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 676 (Tex. 1979). Our duty is to review the decision of the trial court given the information the judge had at
the time of decision. We cannot consider these matters that were not presented to the judge in appellants' response to the
motion for summary judgment. Reliance on such by the majority is improper and cannot be a grounds for reversal. 

 Next, the majority relies on evidence that the missing Lewis Deed was later found and filed in 1904 by King's successors.
The inference is that King was hiding the deed to the detriment of Chapman, because without the deed no interest in
Chapman could be proven. However, King admitted in his pleadings that he and Chapman jointly bought the property from
Lewis's estate and jointly took a deed. That admission in the litigation rendered harmless the absence of the actual deed.
The focus of King's defense in the 1879 lawsuit was that Chapman had never paid for his share, and that King had to pay
the entirety on threat of foreclosure, and that Chapman let King have the land. 

 I am unable to see the importance of the missing Lewis deed given those admissions of King. I do not understand how
without the missing deed, "King's allegations that Chapman wanted out of the land purchase and had not paid his share had
the potential of bearing more weight before the court in cause no 1279." See majority slip opinion at 18. 

 The majority finds evidence of King's extrinsic fraud in the failure of John Rankin to get authority from the probate court
to settle Cause No. 1279. While this may have constituted a defect in the judgment, I can find no argument or authority for
the proposition that it voided the judgment to make it subject to collateral attack. This assault is by bill of review, with a
four-year limitation period. The judgment was signed in April, 1883, and this action was filed in April, 1995, 112 years
later. The failure of the probate court to approve the settlement should have been challenged earlier. There has been no
argument in the response to the motion for summary judgment that Kleberg failed to receive approval from the probate
judge because he was working at the behest of King. 

 Assuming Kleberg was acting as Rankin's attorney in the suit, while at the same time on a retainer to Richard King, there
is no evidence to show that King "corrupted" or directed Kleberg to prevent Helen Chapman or Rankin from proving title
to the undivided one-fourth interest in the Rincon as evidenced by the Lewis Deed. 

The settlement of any lawsuit involves many difficult considerations and decisions, especially given the period in which
this litigation occurred. At the time of the consent judgment both William and Helen Chapman were dead, as were other
alleged witnesses. The Chapman heirs were in South Carolina and were litigating via long distance. The judgment gave
the Chapman estate certain lands that King had apparently had the use of for years, and approved a sale of the land to King.
The Chapmans did not take nothing by their 1879 lawsuit. 

 The recitals of summary judgment evidence tending to raise a fact issue were either not presented to the trial court in
appellants' response to the motion for summary judgment or do not amount to any evidence of extrinsic fraud by
Kleberg/King against Chapman. I would hold that there is no summary judgment evidence that King or Kleberg committed
extrinsic fraud, and therefore, affirm the summary judgment on this issue. 

Trespass To Try Title

 The majority concludes that based upon the evidence reviewed in their determination of the bill of review action
appellants have produced more than a scintilla of probative evidence to raise a genuine issue of material fact concerning
their trespass to try title claim. I disagree. 

 The gist of appellants' argument is that because Helen's grandchildren were not made parties to Cause No. 1279 the
consent judgment is not binding upon them, and therefore, did not adjudicate their rights to the Rincon. In 1870, the Texas
Legislature passed a statute providing that "[i]f the executor or administrator desires to recover possession merely of real
property belonging to the estate, . . . he must bring suit in the District Court, but need not make the heirs parties."(1) This
law was effective at the time of the consent judgment. See East v. Dugan, 15 S.W. 273, 275 (Tex. 1891) (citing the law). 

 In Webster v. Willis, 56 Tex. 468 (Tex. 1882) the supreme court discussed when heirs could sue to recover property for the
estate. The court restated the rule "[t]hat the heirs cannot sue in their own right as heirs for property of the estate; the
executor or administrator must sue." Webster, 56 Tex. at 473 (quoting Giddings v. Steele, 28 Tex. 733, 748 (Tex. 1866)).
The court stated that there were two exceptions to this rule, neither of which are applicable here. Webster, 56 Tex. at 473
(quoting Giddings, 28 Tex. at 748). 

 Also in 1870 was enacted the following: "In every suit against the estate of a decedent involving the title to real estate the
executor or administrator, if any, and the heirs shall be made parties defendant.'" Rev. Stat. art. 1202, (Act of Aug. 15,
1870) p. 141. (emphasis added). Interpreting that statute, the supreme court held in East v. Dugan, 15 S.W. 273 (Tex. 1891)
at p 275, that when a defendant asks for affirmative relief in a suit for land brought by an administrator, the defendant
becomes a plaintiff to the extent of such relief, in which case the heirs of the estate suing must be made parties. Id. at 275.
In East, the pleadings of the defendant were not part of the record and the court presumed they sought affirmative relief.
However, a general denial does not constitute a request for affirmative relief necessitating the joinder of the heirs. SeeJones
v. Gibbs, 130 S.W.2d 265 (Tex. 1939) and Jones v. Gibbs, 130 S.W.2d 274 (Tex. 1939). 

 In the instant case John Rankin, co-executor of Helen Chapman's Estate, prosecuted the action originally brought by Helen
to recover real property belonging to the estate occupied by Richard King. He was not required to join Helen's
grandchildren as parties to the suit. See East, 15 S.W. at 275. The grandchildren could not sue King to recover the
property because the exceptions to the rule announced in Webster did not apply to the Chapman Estate. See Webster, 56
Tex. at 473. King's pleadings in Cause No. 1279 did not seek affirmative relief from Helen's Estate. King plead generally,
and then raised specific defenses, including admitting that the original purchase from the Lewis Estate was made jointly by
King and Chapman, but Chapman had defaulted and King had been sued on the note he alone had given for the purchase. 

 Although a number of pleas were raised by King, I cannot say he requested affirmative relief from the estate. I would
conclude that Rankin was the only person who could sue to recover the property for the estate and that the grandchildren
were not required to be made parties to Cause No. 1279. See East, 15 S.W. at 275. I would hold that the trial court
properly granted summary judgment on appellants' trespass to try title claim. I would affirm the summary judgment. 



______________________________ 

J. BONNER DORSEY, 

Justice 



Publish . 

Tex. R. App. P. 47.3(b). 



Dissenting Opinion delivered and filed 

this 11th day of January, 2001. 

1. The Act of August 15, 1870, 12th Leg. C.S., ch. 81, § 231, 1870 Tex. Gen. Laws 348.